[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 945 
Dewey M. Saxon and his wife, Edna Saxon, sued the Alabama State Docks; its director, John Dutton; its safety director, Frank Daniels; and the State Docks' liability insurance carriers, Lloyd's Underwriters and various other insurance companies, seeking damages for personal injuries Dewey Saxon claimed to have sustained while he was delivering computer equipment to a building owned by the State Docks.[1] Edna Saxon sought damages for loss of consortium. The Saxons alleged negligence and wantonness on the part of the State Docks, Dutton, and Daniels; they sought to recover insurance proceeds directly from the insurance carriers pursuant to Ala. Code 1975, § 33-1-25.[2] The State Docks, Dutton, and Daniels moved for a summary judgment, invoking the doctrine of sovereign immunity under Article I, § 14, Alabama Constitution, as a defense to the Saxons' claims. Lloyd's Underwriters and the other insurance carriers also moved for a summary judgment, arguing that the State Docks' liability insurance policy did not authorize a direct action against them. The trial court denied these motions, and we granted the defendants' requests for permission to appeal. See Rule 5, Ala.R.App.P.[3]
The trial court's order denying the motion for summary judgment filed by the State Docks, Dutton, and Daniels reads, in pertinent part, as follows:
 "This court is of the opinion that the defendants have waived their immunity under Section 14 of the Alabama Constitution by virtue of the purchase of insurance pursuant to Section 33-1-25, Code of Alabama [1975], without providing for a direct right of action against the insurer in the contract of insurance."
The Saxons contend that the trial court properly denied the motion, because, they argue, the State Docks, Dutton, and Daniels waived their constitutional immunity when the State Docks purchased liability insurance without providing for a direct action against the insurance carriers, at least to the extent of the liability insurance coverage.
The State Docks, Dutton, and Daniels maintain that their immunity under § 14 was unaffected by the State Docks' procurement of liability insurance, regardless of whether Dutton, acting within his discretion under § 33-1-25, provided in the insurance policy for a direct action against the State Docks' insurance carriers. We agree.
Article I, § 14, Alabama Constitution, is the basis for sovereign immunity in this state, and that section provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Under this provision, the state and its agencies *Page 946 
have absolute immunity from suit in any court. State officers and employees, in their official capacities and individually, also are absolutely immune from suit when the action is, in effect, one against the state. Phillips v. Thomas, 555 So.2d 81
(Ala. 1989). See, also, Jones v. Alabama State Docks,443 So.2d 902 (Ala. 1983), wherein this Court specifically held that an action for damages against the State Docks, such as the one filed by the Saxons in this case, is prohibited by § 14.
As noted, however, the Saxons insist that the State Docks, Dutton, and Daniels waived their constitutional immunity, at least to the extent of the liability insurance coverage purchased by the State Docks. An express waiver is "[t]he voluntary, intentional relinquishment of a known right."Black's Law Dictionary 1581 (6th ed. 1990). A waiver is implied where one party has pursued such a course of conduct with reference to the other party as to evidence an intention to waive his rights or the advantage to which he may be entitled, or where the conduct pursued is inconsistent with any honest intention other than an intention to effect such a waiver, provided that the other party concerned has been induced by such conduct to act upon the belief that there has been a waiver and has incurred trouble or expense thereby. Black's. It is familiar law in this state that § 14 "wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state." Dunn ConstructionCo. v. State Board of Adjustment, 234 Ala. 372, 376,175 So. 383, 386 (1937). This Court has recognized the " 'almost invincible' 'wall' of the state's immunity, as established 'by the people through their Constitution.' " Jones v. AlabamaState Docks, 443 So.2d at 905, quoting Hutchinson v. Board ofTrustees of University of Alabama, 288 Ala. 20, 24,256 So.2d 281, 284 (1971). Therefore, it is clear that neither the legislature nor the State Docks had the power to waive, either expressly or impliedly, the state's immunity under § 14 and thereby consent to a damages action against the state. We note that the record provides no indication of an attempt on the part of either the legislature or the State Docks to waive the state's sovereign immunity when liability insurance has been purchased. In Jones v. Alabama State Docks, supra, at 904, we specifically addressed the intent of the legislature in enacting § 33-1-25:
 "Appellants' argument that a decision to except the State Docks Department from the cloak of state immunity is supported by the fact that the department is authorized to provide insurance 'for the payment of damages on account of the injury to or death of persons,' Code 1975, § 33-1-25, is not persuasive. As the United States Court of Appeals for the Fifth Circuit has observed, 'The entire statute is couched in permissive tones,' and 'clearly contemplates limited insurance coverage.' Centraal Stikstof Verkoopkanter, N.V. v. Walsh Stevedoring Co., 380 F.2d 523, 533 (5th Cir. 1967). The statute is not directory; it does not require the department to obtain coverage for all risks enumerated in it. Id. Moreover, the statute expressly provides that it should not be interpreted as sanctioning suit against the department:
 "Nothing herein shall be construed to authorize or permit the institution of any civil action or proceeding in any court against the department for or on account of any matters referred to in this section. . . .
 "Code 1975, § 33-1-25. We think the inclusion of this language clearly necessitates our rejection of appellants' strained interpretation of the statute."
"[A] governmental unit's immunity from tort liability is unaffected by its procurement of insurance which purports to protect it from such liability." St. Paul Fire Marine Ins.Co. v. Nowlin, 542 So.2d 1190, 1195 (Ala. 1988), quotingThompson v. Druid City Hospital Board, 279 Ala. 314, 315,184 So.2d 825, 826 (1966). This principle, broadly stated, embodies the idea that an intent to waive governmental immunity should not be presumed from the purchase of liability insurance, especially when, as here, there is no power to waive governmental immunity.
We hold, therefore, that the trial court erred in denying the motion for summary judgment filed by the State Docks, Dutton, *Page 947 
and Daniels on the ground that they had waived their constitutional immunity.[4]
The trial court's order denying the insurance carriers' motion for summary judgment reads, in pertinent part, as follows:
 "After having heard oral argument by counsel for Plaintiffs and Defendants, having examined the applicable statutory law allowing the Alabama State Docks to purchase insurance providing coverage for injuries such as those sustained by the Plaintiff in this case (§ 33-1-25, Code of Alabama 1975), and in consideration of the court's denial of the motions for summary judgment filed by Defendants Alabama State Docks, John Dutton, and Frank Daniels, the court is of the opinion that the Plaintiffs' motion to reconsider the interlocutory order of summary judgment on behalf of 'the insurance defendants' is due to be granted and the summary judgment motions of said defendants are due to be denied.
 "However, the rulings on these motions regarding Lloyd's are correct only if the trial court is wrong in its ruling on the motion for summary judgment filed by the State Docks. There the court denied the summary judgment sought by the Docks, because the court found that the Docks had waived its sovereign immunity by purchasing the policy of liability insurance with knowledge of the provisions of the direct action statute but without inclusion of an express direct action term in the policy itself.
 "If this purchase by the Docks under these circumstances did not constitute a waiver of its sovereign immunity, then knowledge of the laws preserving the sovereign immunity of the Docks under these circumstances is imputed to Lloyd's of London in the sense that every person is deemed to know the law. Thus, at the time Lloyd's sold the policy to the Docks, Lloyd's knew that, because the Docks was immune, the only way the policy could be anything but a sham was for it to be construed as a direct action policy. Likewise, this very same knowledge is imputed to the Docks itself as of the time it purchased the policy.
 "With this knowledge, the Docks paid the premium for the policy; and Lloyd's accepted the premium and issued the policy. Thus, the minds of the parties met, either actually or constructively, to the effect that Lloyd's would be subject to direct action on the policy.
 "If Lloyd's contends that it sold the policy with the understanding that it would not be enforceable under any circumstances, then the court will not countenance such a defense. Rather, the court will deem that the minds met though the eyes winked."
(Emphasis in original.)
Underlying the trial court's order is the well-recognized rule that when the liability of an insurer to pay for injuries suffered by a third party is predicated on the establishment of the liability of its insured to that third party, a direct action by the third party against the insurer is not permitted under Alabama law until the third party has obtained a judgment against the insured. Of course, this rule would not be applicable if the insurance policy purchased by the State Docks provides for a direct action by the Saxons against the insurance carriers, because in such a case the insurance carriers' obligation to pay for Saxon's injuries would not be predicated on the establishment of legal liability on the part of the State Docks. See State Farm Fire Casualty Co. v.Green, 624 So.2d 538 (Ala. 1993). However, the trial court's ruling, as well as the Saxons' argument on appeal, is based on the premise that if the State Docks, Dutton, and Daniels are immune from liability, then the liability insurance policy purchased by the State Docks provides no coverage and is, therefore, a "sham," unless a direct action against the insurance carriers is recognized.[5] However, *Page 948 
as the insurance carriers point out, the policy covers the State Docks and its employees. Although it is true that the State Docks has been held to be a state agency and absolutely protected from civil liability under § 14's umbrella of sovereign immunity, see Jones v. Alabama State Docks, supra, we cannot say that the liability insurance policy is a sham. Certainly, the State Docks has the right to protect itself in the event of any unforeseen changes in the law that might be adverse to it.
Furthermore, the employees of the State Docks are protected from individual liability only under the doctrine of discretionary function immunity. Many factors have to be considered in determining what is a discretionary function, seePhillips v. Thomas, supra, and the availability vel non of discretionary function immunity is by its very nature a fact-specific issue that must be determined on a case-by-case basis. This Court has reversed itself on this issue in the same case. See Taylor v. Shoemaker, 605 So.2d 828 (Ala. 1992). We note that Dutton testified by deposition that the State Docks purchased liability insurance for itself and its employees as a form of safety net in the event that immunity was not available as a defense to a damages suit.
It is clear, therefore, that the liability insurance policy at issue in this case is not a sham, although the State Docks is protected from liability (and Dutton and Daniels may be under the doctrine of discretionary function immunity), even if it does not provide for a direct action against the insurance carriers. The trial court erred in denying the insurance carriers' motion for summary judgment on this ground.
Although other reasons may exist for denying the defendants' motions for summary judgment, the reasons given by the trial court were not adequate. Therefore, the trial court's orders denying the defendants' motions for summary judgment are hereby set aside and the case is remanded for further consideration consistent with this opinion.
ORDERS SET ASIDE; REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, STEAGALL, INGRAM and COOK, JJ., concur.
SHORES and KENNEDY, JJ., dissent.
[1] The State Docks, an agency of the State of Alabama, owns and operates the general cargo docking facility at the Port of Mobile.
[2] Section 33-1-25, in pertinent part, provides:
 "The state docks department is hereby authorized to provide insurance covering loss or damage to its properties, or any properties of others in its custody, care or control, or any properties as to which it has any insurable interest, caused by fire or other casualty; and may likewise provide insurance for the payment of damages on account of the injury to or death of persons, and the loss of or destruction of properties of others; and may pay the premiums thereon out of the revenues of the department. Nothing herein shall be construed to authorize or permit the institution of any civil action or proceeding in any court against the department for or on account of any matters referred to in this section; provided, that any contracts of insurance herein authorized may, in the discretion of the director of the department, provide for a direct right of action against the insurance carrier for the enforcement of any such claims or causes of action."
[3] The State Docks, Dutton, and Daniels appealed separately from the insurance carriers; however, these appeals were consolidated at the Saxons' request.
[4] Dutton and Daniels also argue that they are protected from individual liability under the doctrine of discretionary function immunity found in Restatement (Second) of Torts, § 895D, "Public Officers" (1977). See Phillips v. Thomas, supra. However, because the record does not indicate that this argument was ever considered and ruled on by the trial court, we do not address it.
[5] We note that the rather curious rationale underlying the trial court's rulings on the defendants' motions — that the ruling on the insurance carriers' motion was correct only if the ruling on the motion filed by the State Docks, Dutton, and Daniels was not — guaranteed that at least one of the trial court's rulings would be wrong.
We also note the Saxons' argument that the following provision in the insurance policy, when read in conjunction with other language in the policy, should be construed as providing them with a direct action against the insurance carriers:
 "With respect to such insurance as is afforded by this Policy it is agreed that:
 "a. Underwriters will not use, either in the adjustment of claims or in the defence of suits against the Assured, the 'Sovereign Immunity' of the Assured from tort liability except upon written request of the Named Assured.
 "b. The Assured agrees that the waiver of the defence of 'Sovereign Immunity' shall not subject Underwriters to liability for any portion of a claim, verdict or judgment in excess of the limits of liability stated in this Policy."
In addition, the Saxons argue that § 33-1-25 authorizes a direct action by an injured party against the State Docks' insurance carriers, unless the insurance carriers expressly provide otherwise in the policy. However, because it does not appear from the record that these particular arguments were ever made to the trial court, we do not address them.