885 So.2d 783 (2004)
Michael W. HALEY, as commissioner of the Alabama Department of Corrections
v.
BARBOUR COUNTY et al.
Michael W. Haley, as commissioner of the Alabama Department of Corrections
v.
Barbour County et al.
Donal Campbell, as commissioner of the Alabama Department of Corrections
v.
Barbour County et al.
Donal Campbell, as commissioner of the Alabama Department of Corrections
v.
Barbour County et al.
1020533, 1020534, 1021048 and 1021049.
Supreme Court of Alabama.
January 30, 2004.
*785 William H. Pryor, Jr., atty. gen.; Nathan A. Forrester, deputy atty. gen.; Scott L. Rouse, asst. atty. gen.; and Albert S. Butler, asst. gen. counsel and asst. atty. gen., for appellants Department of Corrections.
Kendrick E. Webb and Bart Harmon of Webb & Eley, P.C., Montgomery, for appellees.
BROWN, Justice.
In these four consolidated appeals, Donal Campbell, the commissioner of the Alabama Department of Corrections,[1] appeals from orders of the Montgomery Circuit Court imposing contempt sanctions and ordering commissioner Campbell to receive certain prisoners, who were being held in county jails, into the state penal system.

Facts and Procedural History
In 1991, numerous Alabama counties and sheriffs (hereinafter collectively referred to as "the counties"), filed an action in the Barbour Circuit Court against Morris Thigpen, then commissioner of the Department of Corrections; Joe Todd, then warden of the Ventress Correctional Facility; and Leslie Thompson, then warden of the Easterling Correctional Facility.[2] The counties claimed, among other things, that the commissioner had failed to accept certain prisoners (hereinafter referred to as "state inmates") into state correctional facilities after the prisoners had been sentenced, thus resulting in overcrowding in jails operated by the counties. This, the counties claim, violated Ala.Code 1975, § 14-3-30(a).[3] The counties thus sought a temporary restraining order and preliminary and permanent injunctions requiring the commissioner to accept state inmates into prison facilities operated by the Department of Corrections ("DOC"). On February 25, 1992, the trial court issued a preliminary injunction requiring the commissioner to accept a convicted state inmate within 30 days of receiving an inmate's transcript.
The commissioner claimed that state facilities could not accept additional prisoners because they were already overcrowded and because of a lack of adequate funding for the state prison system. After several years of hearings and discovery, the parties entered into a settlement agreement pursuant to which the commissioner agreed, among other things, to accept state inmates into state facilities within 30 days of receiving an inmate's transcript. The trial court approved and *786 adopted the settlement agreement in an order issued on September 9, 1998.[4]
In May 2001, the commissioner filed a motion for a temporary restraining order and a preliminary injunction, alleging that the counties had begun delivering too many prisoners to the state prisons. The commissioner also filed a Rule 60(b), Ala. R. Civ. P., motion alleging changed circumstances and requesting relief from the settlement agreement. The counties, on the other hand, filed a motion for an order to show cause, alleging that the commissioner had violated the settlement agreement and the trial court's injunction. On May 18, 2001, the trial court issued an order holding that the commissioner had, in violation of the settlement agreement, failed to timely accept state inmates into state facilities. The trial court ordered the commissioner to bring DOC into compliance with the court's earlier orders.
On July 20, 2001, the trial court found that the commissioner had violated the February 25, 1992, preliminary injunction, the consent order, and its May 18, 2001, order. The trial court thus held the commissioner in civil contempt. The court also found that the counties had suffered actual harm, and it ordered the commissioner to pay "coercive" sanctions in the amount of $26 per day for every state inmate held in jails operated by the counties in violation of the court's orders. The purpose of the sanctions, the trial court stated, was to "effectuate compliance" with state law and the court's orders. The sanctions would be paid to the court and would then be paid directly to the counties harmed by the commissioner's contempt. The trial court also appointed a special master to monitor the commissioner's compliance and to make any recommendations to the trial court concerning sanctions and their payment.
After several hearings and much discovery, the special master reported his findings and recommendations to the trial court. On June 14, 2002, the trial court issued an order finding that the commissioner had again failed to comply with the trial court's orders. Thus, the trial court purported to assess DOC and "the State of Alabama" coercive monetary sanctions in the amount of $2,161,276, and ordered the commissioner and the state comptroller to issue warrants to each of the counties in amounts specified by the trial court. It also ordered the commissioner to pay the counties' attorney fees in the amount of $153,824.39.
Subsequently, on September 12, 2002, the commissioner submitted a plan to the trial court outlining certain proposals intended to bring DOC into compliance with the trial court's orders. Additionally, on December 3, 2002, the commissioner filed a motion entitled "Motion for Order of Emergency Relief." In his motion, the commissioner claimed that the counties were planning to deliver large numbers of state inmates to DOC facilities and that DOC could not handle such an influx.
On December 6, 2002, the trial court issued an order again holding the commissioner in contempt of court for failing to follow the trial court's previous orders and for failing to implement the settlement agreement and the plans for bringing DOC into compliance. The trial court thus ordered the commissioner to pay monetary sanctions of $50 per day per inmate. Specifically, the trial court ordered that of that $50 the counties would be awarded $26 per inmate and $24 would be paid to *787 the circuit court clerk. The funds paid to the clerk would then be used "to relieve the overcrowding of the County jails" and to implement the plans submitted by the commissioner and the Governor. This is the order the commissioner appeals from in case no. 1020533.
On December 12, 2002, the court issued an order in response to the commissioner's December 3, 2002 "Motion for Order of Emergency Relief." In that order, the trial court found that it would be dangerous for all of the counties to deliver the state inmates then in their county jails to Kilby Correctional Facility[5] at one time. The trial court's order provided that the counties could increase the total average number of state inmates they were to deliver to Kilby each week by 100, but in no event could they deliver more than 25 additional inmates per day, and they must give DOC 72 hours' notice before they could deliver the additional state inmates. This is the order the commissioner appeals from in case no. 1020534.
Later, on February 14, 2003, the trial court ordered that $2,417,000 in proceeds generated by DOC from the sale of certain land it owned be paid to the circuit court. Those funds, the court ordered, would be given to certain agencies to alleviate prison overcrowding and to pay "expenses and fees" for the counties. This is the order the commissioner appeals from in case no. 1021048. In response to a postjudgment motion related to the February 14 order, the trial court issued another order on March 13, 2003, which required DOC to pay the entire $2,417,000 generated by the land sale to the trial court as a coercive sanction. This is the order the commissioner appeals from in case no. 1021049.[6]

Discussion

I. Cases No. 1021048 & No. 1021049
The counties claim that the commissioner's appeals of the trial court's February 14, 2003, and March 13, 2003, orders have been rendered moot by an act of the Legislature. Specifically, the counties claim that the Legislature, in Act No. 2003-55, effective April 9, 2003, removed $1,875,000 from the land-sale proceeds and appropriated that amount to pay for certain DOC programs. Moreover, the counties claim that the Legislature, in Act No. 2003-299, effective June 18, 2003, appropriated the remaining land-sale funds to be expended in a manner to help bring DOC into full compliance with the trial court's February 14, 2003, order. The counties further allege that, in compliance with the February 14 order, a check was delivered to the counties for payment of their attorney fees. The commissioner acknowledges that no controversy exists concerning the disposition of the funds subject to the trial court's orders.
"The general rule is that if, pending an appeal, an event occurs that makes determination of the case unnecessary, the appeal will be dismissed...." In re Involuntary Commitment of Skelton, 777 So.2d 148, 149 (Ala.Civ.App.2000). Because all of the moneys subject to the trial court's February 14 and March 13 orders have been expended in compliance with those orders, any controversy concerning those orders of the trial court no longer exists; therefore, cases no. 1021048 and no. 1021049 are dismissed as moot. See State ex rel. Eagerton v. Corwin, 359 So.2d 767, 769 (Ala.1977) ("A case is moot when there is no real controversy and it seeks to determine *788 an abstract question which does not rest on existing facts or rights.").

II. Case No. 1020533
In case no. 1020533, the commissioner appeals from the trial court's December 6, 2002, order, which requires the commissioner to pay monetary sanctions. The sanctions, the commissioner argues, violate Ala. Const.1901, § 14.
Section 14, Ala. Const.1901, provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." This section affords the State and its agencies an "absolute" immunity from suit in any court. Ex parte Mobile County Dep't of Human Res., 815 So.2d 527, 530 (Ala.2001) (stating that Ala. Const.1901, § 14, confers on the State of Alabama and its agencies absolute immunity from suit in any court); Ex parte Tuscaloosa County, 796 So.2d 1100, 1103 (Ala.2000) ("Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state...."). Indeed, this Court has described § 14 as an "almost invincible" "wall" of immunity. Alabama State Docks v. Saxon, 631 So.2d 943, 946 (Ala.1994). This "wall of immunity" is "nearly impregnable," Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002), and bars "almost every conceivable type of suit." Hutchinson v. Board of Trustees of Univ. of Ala., 288 Ala. 20, 23, 256 So.2d 281, 283 (1971). Moreover, if an action is an action against the State within the meaning of § 14, such a case "presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent." Patterson, 835 So.2d at 142-43.
Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State. Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala.2003); Mitchell v. Davis, 598 So.2d 801, 806 (Ala.1992). "In determining whether an action against a state officer or employee is, in fact, one against the State, [a][c]ourt will consider such factors as the nature of the action and the relief sought." Phillips v. Thomas, 555 So.2d 81, 83 (Ala.1989). Such factors include whether "a result favorable to the plaintiff would directly affect a contract or property right of the State," Mitchell, 598 So.2d at 806, whether the defendant is simply a "conduit" through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala.1988), and whether "a judgment against the officer would directly affect the financial status of the State treasury," Lyons, 858 So.2d at 261. Moreover, we note that claims against state officers in their official capacity are "functionally equivalent" to claims against the entity they represent. Hinson v. Holt, 776 So.2d 804, 810 (Ala.Civ.App.1998); see also McMillian v. Monroe County, Ala., 520 U.S. 781, 785 n. 2, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)(noting that a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent); Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1060 (11th Cir.1992) (holding that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent). In this case, the commissioner represents DOC, which, as a department of the State, is entitled to sovereign immunity. Rodgers v. Hopper, 768 So.2d 963, 968 (Ala.2000) (holding that DOC is entitled to sovereign immunity under § 14, because a judgment against it would be paid from the treasury of the State).
The issue presented in this case is whether, in light of § 14, the commissioner, *789 in his official capacity, may be assessed civil sanctions for his failure to comply with the trial court's injunctive orders. The parties are unable to provide this Court with any precedent directly addressing this issue; indeed, this Court has found no caselaw addressing whether § 14 prevents the trial court from assessing contempt sanctions against the State.[7]
It is clear that the particular sanctions in this case "directly affect the financial status of the state treasury." Lyons, 858 So.2d at 261. While the counties claim that the sanctions punish the commissioner for his contempt and seek to compel compliance with the court's orders, the effect of the trial court's order is to impact the treasury and divest it of funds. Section 14, however, forbids such an assault on the state treasury. See Lyons, 858 So.2d at 261; see also Patterson, 835 So.2d at 142 (holding that § 14 prevents the State from being sued, and a suit against the state "`cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury.'" (quoting State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932))); and Southall v. Stricos Corp., 275 Ala. 156, 158, 153 So.2d 234, 236 (1963) (holding that an action against an officer was not an action against the State, because the relief sought would not "take away any property of the State, or fasten a lien on it, or interfere with the disposition of funds in the treasury"). Thus, we hold that the trial court's order assessing against the commissioner in his official capacity monetary sanctions for contempt violates § 14.[8]

III. Case No. 1020534
In case no. 1020534, the commissioner appeals from the trial court's December 12, 2002, order, forbidding the counties from delivering to the state prison system more than a set number of inmates per week.[9] The commissioner's arguments on appeal do not explain specifically how this order is in error. However, the commissioner does allege, generally, that the trial court's orders in these cases violate the separation-of-powers doctrine found in Ala. Const.1901, § 43.[10] Specifically, the commissioner maintains that the trial court's orders in these cases amount to the judicial branch "directing the administration of the state prison system." The commissioner claims that because the Legislature has delegated this task to the executive branch, and not to the judiciary, the trial court is barred from issuing such orders.
*790 We hold that the trial court's December 12 order does not amount to an exercise of executive powers by the judicial branch. By enacting Ala.Code 1975, § 14-3-30, the Legislature has mandated that, when a state inmate is sentenced to the penitentiary, DOC direct how that inmate shall be received into the state penal system. The trial court's order in this case does not attempt to "administer" DOC or to exercise the executive powers. Instead, it simply orders the commissioner to do what § 14-3-30 requires of DOC: to receive state inmates. The order does not violate § 43.

Conclusion
The trial court's order of December 6, 2002, ordering the commissioner to pay sanctions for contempt is reversed. The trial court's order of December 12, 2002, requiring DOC to accept a set number of inmates per week is affirmed. The appeals from the February 14, 2003, and March 13, 2003, orders are dismissed as moot. The causes are remanded for proceedings consistent with this opinion.
1020533REVERSED AND REMANDED.
SEE, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs in the judgment.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
HOUSTON, J., recuses himself.
1020534AFFIRMED.
SEE, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs in the judgment.
JOHNSTONE, J., dissents.
HOUSTON, J., recuses himself.
1021048DISMISSED AS MOOT.
SEE, LYONS, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
HOUSTON, J., recuses himself.
1021049DISMISSED AS MOOT.
SEE, LYONS, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
HOUSTON, J., recuses himself.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur in the rationale in part and in the judgment insofar as the main opinion addresses case number 1020533. I agree that the State and its agencies are immune from suit for money damages or monetary penalties for contempt. The repeated statements in Part II, which addresses case number 1020533, to the effect that the State and its agencies are absolutely immune from suit in any court, however, fail to recognize the common and established exceptions to State immunity, such as the exceptions for suits seeking declaratory relief or performance of ministerial duties. Indeed, Part III of the main opinion relies on the exception for suits seeking performance of ministerial duties, although Part III does not expressly recognize the exception or cite the authority for it.
I respectfully dissent from the main opinion insofar as it, principally in Part III, affirms certain injunctive relief ordered by the trial court. The injunction requires far more than performance of a ministerial duty. The injunction orders the commissioner to receive prisoners at a rate that will often be so unsafe that it is illegal. Therefore, the injunction violates *791 § 43, Ala. Const.1901, by usurping the executive power to execute the laws faithfully.
I concur in the main opinion insofar as it, principally in Part I, addresses cases number 1021048 and number 1021049. I agree that they be dismissed as moot.
NOTES
[1] Michael W. Haley, the named appellant in two of the appeals, was Campbell's predecessor as commissioner. Rule 43(b), Ala. R.App. P., provides that "[w]hen a public officer is a party to an appeal ... and during its pendency ... ceases to hold office, the action shall not abate and the public officer's successor is automatically substituted as a party."
[2] Since the action was filed, several individuals have succeeded Thigpen as commissioner, including Michael W. Haley, the named appellant in case no. 1020533 and case no. 1020534. Donal Campbell is the current commissioner.
[3] Alabama Code 1975, § 14-3-30(a), provides:

"(a) When any convict is sentenced to the penitentiary, the judge of the court in which the sentence is rendered shall order the inmate to be confined in the nearest secure jail. The clerk of the court shall at once notify the Department of Corrections as to the jail where the inmate is confined, forward to the department a copy of the judgment entry and sentence in the case, and inform the department if any special care is necessary to guard the inmate. Thereupon, the department shall direct where the inmate shall be taken for confinement or hard labor."
[4] The trial court's order, as well as the settlement agreement, can be found in Ex parte Glover, 801 So.2d 1, 3 n. 5 (Ala.2001).
[5] Kilby Correctional Facility operates as DOC's processing and receiving center for state inmates.
[6] Neither Todd, Thompson, nor their successors at the respective correctional facilities are parties to these appeals.
[7] We do note that in Carter v. State ex rel. Bullock County, 393 So.2d 1368 (Ala.1981), this Court upheld a contempt "fine" against a county tax assessor who was being sued in both his official and individual capacities; however, the opinion in Carter did not address whether the sanctions violated § 14.
[8] While we hold that § 14 forbids the use of monetary sanctions for contempt against a state official sued in his official capacity, this opinion does not address whether the trial court retains its other contempt powers, including incarceration.
[9] During oral argument, the commissioner's counsel acknowledged that DOC was, at that time, in compliance with this order.
[10] Ala. Const.1901, § 43, states:

"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."