BOLIN, Justice.
On March 30, 2009, Bridget Weaver sued the Board of School Commissioners of Mobile County (“the Board”) and Roy D. Nichols, in his official capacity as superintendent of the Mobile County Public School System (the Board and Nichols are hereinafter collectively referred to as “the defendants”), seeking a declaratory judgment, a writ of mandamus, and injunctive relief. Weaver alleged that she had been partially terminated or demoted from her employment as an assistant principal pursuant to a reduction-in-force policy implemented by the defendants; that she was entitled to the benefit of policy no. 6.44, which mandates that “any tenured employee terminated or demoted pursuant to [a reduction-in-force policy] shall have a onetime recall right to a position for which he or she is certified and legally qualified”; and that, since the time of Weaver’s partial termination or demotion, several assistant principals with less seniority than her have been placed in available assistant-principal positions. Weaver sought an order from the trial court declaring that the defendants have failed and refused to accord her the rights and benefits she alleges she is entitled to under policy no. 6.44 and per *1212 manent injunctive relief requiring the defendants to provide her with the full benefits of policy no. 6.44, including placement into a position to which she says she had reemployment rights, -with backpay, interest, and restoration of progress toward tenured status as an assistant principal. Alternatively, Weaver sought a writ of mandamus requiring the defendants to provide her the full benefits of policy no. 6.44, including the placement into a position to which she says she is entitled, with backpay, interest, and restoration of progress toward tenured status as an assistant principal.
On- May 12, 2009, Susan Jill Dickinson moved the trial court to intervene as a plaintiff in the action pursuant to Rule 24, Ala. R. Civ. P. Dickinson claimed an interest relating to the subject matter of the action and alleged that her claims had questions of law and fact common to those asserted in Weaver’s action.
On June 12, 2009, the defendants answered the complaint stating that the reduction-in-force policy was implemented by the Board in May 2008 and that it applied to only certain employees in central administration and did not apply to Weaver. On June 26, 2009, the defendants amended their answer to assert certain affirmative defenses and to allege that Weaver’s claims should have been brought in an arbitration proceeding pursuant to the Alabama Teacher Tenure Act, § 16-24-1 et seq., Ala.Code 1975. On July 10, 2009, the defendants answered Dickinson’s complaint in intervention asserting the same defenses they asserted in response to Weaver’s complaint.
On August 27, 2009, Shirley Reese moved the trial court to intervene as a plaintiff in the action pursuant to Rule 24, Ala. R. Civ. P. Reese claimed an interest relating to the subject matter of the action and alleged that her claims had questions of law and fact common to those asserted in Weaver’s action.
On October 13, 2010, Weaver, Dickinson, and Reese (hereinafter collectively referred to as “the plaintiffs”) moved for a summary judgment. On February 9, 2011, the defendants filed a response in opposition to the plaintiffs’ summary-judgment motion. On March 4, 2011, the trial court denied the plaintiffs’ summary-judgment motion.
The case proceeded to trial on June 9, 2011. Following an ore tenus proceeding, the trial court, on August 2, 2011, entered a judgment in favor of the plaintiffs. The trial court awarded the plaintiffs backpay and ordered that the plaintiffs be offered assistant-principal positions as those positions become available.[1] Both sides moved the trial court to amend or modify its judgment. On August 30, 2011, the trial court entered an amended judgment incorporating its judgment of August 2, 2011, and awarding the plaintiffs certain monetary damages and equitable relief. The trial court ordered that Weaver and Reese be immediately reinstated to assistant-principal positions;[2] awarded Weaver backpay in the amount of $28,121, Dickinson $22,928, and Reese $18,521; ordered that the defendants credit the plaintiffs with the retirement benefits they would have earned had they retained their assistant-principal positions; and also ordered that the defendants pay interest on the *1213 monetary damages awarded the plaintiffs at a rate of 6% per annum.
On September 1, 2011, the defendants moved the trial court to alter, amend, or vacate its final judgment. On September 6, 2011, Dickinson moved the trial court to alter, amend, or vacate its final judgment. On September 23, 2011, the trial court entered an order denying the defendants’ postjudgment motion and denying Dickinson’s motion as moot. The defendants appeal.

Facts

The trial court made the following de-tañed findings of fact:
“1. The plaintiffs in this action have been employed by the defendant Board for various periods of time as teachers and assistant principals. In the 2007-2008 school year, plaintiffs were employed by the Board as assistant principals. In the 2007-2008 school year, plaintiffs had acquired ‘continuing service status’ (tenure) as teachers, as that term is used in Section 16-24-2, Code of Alabama 1975. In the 2007-2008 school year, plaintiffs had not acquired tenure in their positions of assistant principal.
“2. On or about February 15, 2008, plaintiffs received a notice directed to interim and non-tenured assistant principals for a meeting to be held in the board room of the Board. The meeting was handled by Paul Tate, Assistant Superintendent of Human Resources, but was called by Superintendent Nichols. The attendees were informed that, due to budget cuts, the Board was going to be requested to implement RIF Policy 6.44 and that the assistant principals needed to begin looking for another job, which was interpreted to mean that they should be looking to go back into the classroom as tenured teachers. Various Administrators were present at that meeting, including other assistant superintendents and the acting Deputy Superintendent.
“3. In May, the plaintiffs received a letter dated May 6, 2008, from Superintendent Nichols advising that the Board had met on May 5, 2008, and approved a motion to non-renew plaintiffs’ contracts as assistant principals. The plaintiffs were told that they were assigned to a nine month teaching position in their area of certification. This action is known as a partial cancellation of their contract. The May 6, 2008 letter was delivered via central office school pouch to the individual schools and delivered to teachers in their individual schools.
“4. The plaintiffs also received a letter dated May 9, 2008, signed by Superintendent Nichols. The May 9, 2008, letter was hand delivered to the plaintiffs, and all similarly situated assistant principals, and the plaintiffs had to sign for this letter. The May 9, 2008, letter gave notice of the intention of the Superintendent to recommend ‘partial ean-ceUation’ and set forth the following reasons:
“ T. Justifiable decrease in the number of teaching positions;
“ ‘2. Other good and just cause.’
“The Superintendent’s May 9, 2008, letter continued that, according to Section 16-24-8, [Ala.Code 1975,] additional cancellation reasons were:
“‘Justifiable decrease in the number of assistant principal positions pursuant to implementation of budgetary cuts.’
“The Superintendent then noted:
“ ‘The Board of School Commissioners of Mobñe County, at its meeting on May 5, 2008, accepted my recommendation of a reduction-in-force because of budgetary consideration for the 2008-2009 school year which influ- *1214 enees your current position. The action is not a performance-based decision. The action is taken under School District’s Reduction-in-Force Policy No. 644.’
“The letter of May 9, 2008, also advised the assistant principals of their right to request a conference pursuant to law.
“5. Policy No. 644 applies when there is a reduction in force and is generally referred to as a ‘recall’ policy. It is noted in the policy that:
“ ‘This policy applies to non-tenured and probationary employees only to the extent that the individual would have been rehired by the School the following year but for the Reduction-in-Force.’
“6. While the policy states that there are no contractual rights established by this policy, the policy does state as to non-tenured employees:
“‘However, if a reduction-in-force is declared by the Board and the principal of a particular school designates a non-tenured employee as an individual that would have been hired but for the reduction-in-foree, that employee shall have a one time recall right to a position for which he or she is certified and legally qualified for one calendar year from the effective date of his or her termination or demotion that resulted only because of a reduction-in-force.’
“7. While two of the plaintiffs in this case requested a conference and/or arbitration, those requests were later withdrawn and none of the plaintiffs herein had a hearing or arbitration in this matter. Numerous assistant principals did go through the hearing and arbitration process; and for those teachers who proceeded through the arbitration process, a settlement was reached, and all of the assistant principals who had chosen the arbitration process were rehired as assistant principals. Susan J. Dickinson, in explaining her reason for withdrawing from the arbitration process, stated that she had choices and one was to be a loyal school employee and not to be looked at as a troublemaker or one who makes waves. According to plaintiff Dickinson, she felt that the Board would honor its letter of May 9, 2008, and that she would be called back as an assistant principal when the financial situation was righted. Plaintiff Dickinson’s sentiments were shared by the other two plaintiffs in this case.
“8. The letter of May 9, 2008, announcing the reduction in force and the implementation of Policy No. 644 was copied to the attorney for the Board and also to the Human Resources Division.
“9. Plaintiffs Weaver and Reese went back into teaching or library positions on a nine month teaching contract basis. Plaintiff Dickinson also went back to a teaching position, but on August 12, 2010, she was promoted to principal of Calcedever School.
[[Image here]]
“11. Eventually, the plaintiffs began to notice that employees were being recalled to the system to fill assistant principal positions that were no higher in seniority and in many cases were lower in seniority than the plaintiffs in this case. An attorney was retained and a letter was forwarded to the Board on January 12, 2009, on behalf of plaintiff Weaver noting that she had reapplied for her assistant principal position at Blount High School, but that she had been advised that the position had been awarded to a person with substantially less seniority than she had. The letter stated that Weaver intended to pursue her rights under the RIF policy and requested that the Board place her in an *1215 assistant principal position immediately. The Board never replied to this letter.
“Superintendent Nichols testified at trial that the May 9, 2008, letter was a ‘mistake’ and that he was unaware of this ‘mistake’ until the attorney’s letter of January 12, 2009. The ‘mistake’ was brought to his attention by Paul Tate, Assistant Superintendent of Human Resources.
“The Court finds there has never been an official retraction or correction of the ‘mistake’ other than the defendants claiming by way of their answer in this lawsuit that they should have no responsibility for the ‘mistake.’
“12. Superintendent Nichols testified at trial that he did not actually sign each of the letters sent to the assistant principals who were being demoted. He stated that his signatures were affixed by a machine. There were about 50 or so assistant principals who did not have tenure that were affected by the Superintendent’s letters. Superintendent Nichols stated that he did not compose the letter, but believed that he must have looked at the letter before it was sent out. Superintendent Nichols stated that he was aware that the letter was copied to the Board’s attorney and to the Human Resources Division.
“Superintendent Nichols stated that the letters set forth statutory reasons for termination and a partial cancellation. Superintendent Nichols acknowledged that the reasons set forth in the letters for partial cancellation were because of budget cuts. Superintendent Nichols stated that, because of economic problems, had they not implemented these cancellations, the Board would have been out of money. Superintendent Nichols believed that the measures he was recommending were necessary and essential. In Superintendent Nichols’s mind, the measures he was taking were unavoidable. The partial cancellation was not due to attrition. Superintendent Nichols testified that there was a reduction in force being implemented at the Central Office, but he is not certain that there was an actual Board meeting on May 5, 2008. While uncertain what the actual date of the Board meeting was or what was actually done, Dr. Nichols testified that it was fair to say that there was an unavoidable reduction in force beyond normal attrition due to shortage of revenue in May of 2008 in the Mobile County School System.
“13. Nichols identified Paul Tate as the Assistant Superintendent of Human Resources during the time frame in question and that Martha Peake was acting Deputy Superintendent for the School System at that time. Ms. Peake was identified by one of the plaintiffs as being in attendance at the February 2008 meeting. Superintendent Nichols acknowledged that Assistant Superintendent Tate had authority to act for the Mobile County Public School System in matters of Human Resources.
“The following questions and answers occurred at the trial:
“ ‘Q. Dr. Nichols, should not teachers and assistant principals be able to rely upon the statements made by Paul Tate concerning matters of Human Resources?
“ ‘A. I would hope so, yes; Paul Tate or any other representative of the System.
“‘Q. And, Dr. Nichols, should not teachers and assistant principals be able to rely upon official communications from you concerning a partial termination?
“ ‘A. Yes. But mistakes do happen. In this case, a mistake did happen.
*1216 [[Image here]]
“ ‘If there was a conflict between what they received in the letter — and there obviously was — and what was being said publicly, I would expect that a prudent person would’ve checked it out.’ ”

Standard of Review

Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies. Our ore tenus standard of review is well established. “ “When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.’ ” Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘ “[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’
“Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, ‘that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.’ Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).”
Kennedy v. Boles Invs., Inc., 58 So.3d 60, 68 (Ala.2010).

Discussion State Immunity

A. The Board

The defendants initially argue that the plaintiffs’ claims for monetary and injunc-tive relief are barred by the doctrine of State immunity under Art. I, § 14, Ala. Const.1901. As discussed above, the plaintiffs sought backpay and reinstatement to assistant-principal positions, and the trial court awarded the plaintiffs backpay and ordered that the plaintiffs be reinstated to assistant-principal positions. (At the time the order was issued, Dickinson had been hired as a principal.)
In Ex parte Monroe County Board of Education, 48 So.3d 621 (Ala.2010), this Court stated:
“‘“Section 14, Ala. Const.1901, provides ‘[t]hat the State of Alabama shall never be made a defendant in any court of law or equity.’ This section affords the State and its agencies an ‘absolute’ immunity from suit in any court. Ex parte Mobile County Dep’t of Human Res., 815 So.2d 527, 530 (Ala.2001) (stating that Ala. Const.1901, § 14, confers on the State of Alabama and its agencies absolute immunity from suit in any court); Ex parte Tuscaloosa County, 796 So.2d 1100, *1217 1108 (Ala.2000) (‘Under Ala. Const, of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state ....’)• Indeed, this Court has described § 14 as an ‘almost invincible’ ‘wall’ of immunity. Alabama State Docks v. Saxon, 631 So.2d 943, 946 (Ala.1994). This ‘wall of immunity is ‘nearly impregnable,’ Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002), and bars ‘almost every conceivable type of suit.’ Hutchinson v. Board of Trustees of Univ. of Ala., 288 Ala. 20, 23, 256 So.2d 281, 283 (1971). Moreover, if an action is an action against the State within the meaning of § 14, such a case ‘presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent.’ Patterson, 835 So.2d at 142-43.”
“ ‘Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004) (emphasis added). For purposes of § 14 immunity, county boards of education are considered agencies of the State. Louviere v. Mobile County Bd. of Educ., 670 So.2d 873, 877 (Ala.1995) (“County boards of education, as local agencies of the State, enjoy [§ 14] immunity.”). Thus, this Court has held that county boards of education are immune from tort actions. See Brown v. Covington County Bd. of Educ., 524 So.2d 623, 625 (Ala.1988); Hutt v. Etowah County Bd. of Educ., 454 So.2d 973, 974 (Ala.1984).’
“Ex parte Jackson County Bd. of Educ., 4 So.3d [1099] at 1102-03 [ (Ala.2008) ].
“In Ex parte Hale County Board of Education, 14 So.3d 844 (Ala.2009), this Court revisited the issue whether county boards of education were immune from suit, overruling Sims v. Etowah County Board of Education, 337 So.2d 1310 (Ala.1976), and Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774 (1920), and stating that ‘because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit’ and that the immunity accorded a county board of education is absolute.”
48 So.3d at 624-25. As will be discussed infra, there are six general categories of actions that do not come within the prohibition of § 14. However, these “exceptions” to § 14 immunity extend only to actions against State officials, and not to actions against State agencies. Ex parte Bessemer Bd. of Educ., 68 So.3d 782 (Ala.2011). See also Vandenberg v. Aramark Educ. Servs., Inc., 81 So.3d 326, 333 (Ala.2011) (stating that “the defendant boards of trustees are corporate bodies governing the universities, and there is no exception to the immunity afforded the State by § 14 that would permit the trial court to entertain an action against them, regardless of whether monetary, injunctive, or declaratory relief is being sought”).
Accordingly, because the Board is an agency of the State of Alabama it is entitled to absolute immunity under § 14 as to the claims asserted against it by the plaintiffs. Therefore, the trial court lacked jurisdiction over those claims, and the judgment entered against the Board on those claims is void. Because the Board is appealing from a void judgment, its appeal is due to be dismissed. See Ex parte Citizens Bank, 879 So.2d 535, 540 (Ala.2003) (holding that “an appeal from a void judgment must be dismissed”).

B. Superintendent Nichols

As to Superintendent Nichols in his official capacity, this Court held in Alabama Department of Transportation v. Harbert *1218 International, Inc., 990 So.2d 831, 889 (Ala.2008):
“Not only is the State immune from suit under § 14, but ‘[t]he State cannot be sued indirectly by suing an officer in his or her official capacity....’ Lyons [u River Road Constr., Inc.], 858 So.2d [257,] 261 [ (Ala.2003) ]. ‘Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State.’ Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004). To determine whether an action against a State officer is, in fact, one against the State, this Court considers
“ ‘whether “a result favorable to the plaintiff would directly affect a contract or property right of the State,” Mitchell [v. Davis, 598 So.2d 801, 806 (Ala.1992) ], whether the defendant is simply a “conduit” through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala.1988), and whether “a judgment against the officer would directly affect the financial status of the State treasury,” Lyons [v. River Road Constr., Inc.], 858 So.2d [257] at 261 [ (Ala.2003) ].’
“Haley, 885 So.2d at 788. Additionally, ‘[i]n determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought.’ Ex parte Carter, 395 So.2d 65, 67-68 (Ala. 1980).”
Additionally, this Court has stated:
“The immunity afforded State officers sued in their official capacities, however, is not unlimited:
“ ‘[Section 14] immunity from suit does not extend, in all instances, to officers of the State acting in their official capacity. Unzicker v. State, 346 So.2d 931 (Ala.1977). In limited circumstances the writ of mandamus will lie to require action of state officials. This is true where discretion is exhausted and that which remains to be done is a ministerial act. See Hardin v. Fullilove Excavating Co., Inc., 353 So.2d 779 (Ala.1977); Tennessee & Coosa R.R. Co. v. Moore, 36 Ala. 371 (1860). Action may be enjoined if illegal, fraudulent, unauthorized, done in bad faith or under a mistaken interpretation of law. Wallace v. Board of Education of Montgomery Co., 280 Ala. 635, 197 So.2d 428 (1967). If judgment or discretion is abused, and exercised in an arbitrary or capricious manner, mandamus will lie to compel a proper exercise thereof. The writ will not lie to direct the manner of exercising discretion and neither will it lie to compel the performance of a duty in a certain manner where the performance of that duty rests upon an ascertainment of facts, or the existence of conditions, to be determined by an officer in his judgment or discretion. See Barnes v. State, 274 Ala. 705, 151 So.2d 619 (1963).’
“McDowell-Purcell, Inc. v. Bass, 370 So.2d 942, 944 (Ala.1979).
“Moreover, certain causes of action are not barred by § 14:
“ ‘ “There are four general categories of actions which in Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971), we stated do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgments Act ... seeking construction of a statute and its application in *1219 a given situation. 287 Ala. at 229-230, 250 So.2d 677. Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law. Wallace v. Board of Education of Montgomery County, 280 Ala. [635] at 639, 197 So.2d 428 [ (1967) ]; Unzicker v. State, 346 So.2d 931, 933 (Ala.1977); Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962).” ’
“Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 58 (Ala.2006) (quoting [Ex parte] Carter, 395 So.2d [65,] 68 [ (Ala.1980) ]) (emphasis omitted). These actions are sometimes referred to as ‘exceptions’ to § 14; however, in actuality these actions are simply not considered to be actions “‘against the State” for § 14 purposes.’ Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002). This Court has qualified those ‘exceptions,’ noting that ‘ “[a]n action is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff’s recovery of money from the [S]tate.” ’ Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004) (quoting Shoals Cmty. Coll. v. Colagross, 674 So.2d 1311, 1314 (Ala.Civ.App.1995)) (emphasis added in Jones).”
Harbert, 990 So.2d at 839-40.
The plaintiffs argue that the defendants’ actions created a legal duty on the part of Superintendent Nichols to abide by the representation contained in the letter of May 9; thus, they contend that their action falls within the first “exception” because it was brought to compel Superintendent Nichols to perform a legal duty. The plaintiffs alleged in their complaints that they were notified by letter on May 9, 2008, that their employment with the Board was being partially terminated. The letter of May 9, 2008, advised the plaintiffs that the action was being taken pursuant to the School District’s reduction-in-force policy no. 644.[3] Policy no. 6.44 provides:
“[I]f a reduction in force is declared by the Board and the principal of a particular school designates a non-tenured employee as an individual that would have been hired but for the reduction in force, that employee shall have a one time recall right to a position for which he or she is certified and legally qualified for one calendar year from the effective date of his or her termination or demotion that resulted only because of a reduction in force.... ”
The plaintiffs further alleged in their complaints that assistant principals with less seniority had been placed in available assistant-principal positions ahead of them. The plaintiffs sought both declarative and injunctive relief compelling the defendants to provide them with the full benefits of reduction-in-force policy no. 644, including reinstatement to assistant-principal positions with backpay.
The Board is vested with the authority to appoint and remove all principals and teachers upon the recommendation of the superintendent. § 16-8-23, *1220 Ala.Code 1975. The superintendent is not vested with the authority to employ or to terminate principals and teachers beyond making a recommendation to the Board. Indeed, it was the Board, upon the recommendation of Superintendent Nichols, that approved a motion not to renew the plaintiffs’ contracts as assistant principals and to implement the reduction-in-force policy.
In Ex parte Bessemer Board of Education, 68 So.3d 782 (Ala.2011), a case relied on by the plaintiffs, the plaintiff, a teacher employed by the Bessemer Board of Education, sued the Board and its members in their official capacities, alleging that her statutory pay raise had been miscalculated. The plaintiff sought backpay and to have the amount of her pay properly recalculated for the coming years. The trial court entered an order in favor of the plaintiff. The Board and its members argued to this Court that they were entitled to State immunity. This Court held that the Board was an agency of the State and was entitled to absolute immunity. However, as to the Board members, who had been sued in their official capacities, this Court held:
“[R]egarding the Bessemer Board members in their official capacities, [the plaintiff] is entitled to bring an action to compel them to perform their legal duty or to perform a ministerial act. In the present case, it is undisputed that the Bessemer Board members have a statutory duty to pay [the plaintiff] the appropriate salary increase under § 16-22-13.1, Ala.Code 1975. That statute specifically provides that a public school teacher with [the plaintiff’s] years of experience being paid under the State minimum-salary schedule shall receive a 5.5% increase in salary beginning with the fiscal year 2000-2001. The basis for this calculation is at issue in this lawsuit. The amount of the salary increase the Bessemer Board members must pay [the plaintiff] involves obedience to the statute; it does not involve any discretion. The Bessemer Board members have a legal duty to pay [the plaintiff] the correctly calculated salary increase under the statute and in doing so they are performing a ministerial act. Therefore, [the plaintiff’s] action against the Bessemer Board members in their official capacities is not an action ‘against the State’ for § 14 purposes; thus, the Bessemer Board members are not entitled to § 14 immunity from [the plaintiff’s] action to compel them to fulfill their statutory duty to pay her the appropriate salary increase.”
68 So.3d at 790-91.
Here, although the defendants concede in their brief to this Court that they were required to adopt the reduction-in-force policy pursuant to § 16-1-33, Ala. Code 1975, they argue that they were not required to implement the policy and thus had no legal duty to reinstate the plaintiffs in accordance with the policy. Assuming, without deciding, that a duty did arise on behalf of Superintendent Nichols to implement the reduction-in-force policy based on the circumstances surrounding the representations contained in the letter of May 9, it was the Board’s individual members in their official capacities who were vested with the authority to provide the plaintiffs with the ultimate relief sought, i.e., reinstatement to their positions with back-pay. § 16-8-23, Ala.Code 1975. Like the situation presented in Ex parte Bessemer Board of Education, where the Board members were vested with the statutory duty to pay the plaintiff teacher her appropriate salary increase, it was the individual board members in this case who were vested with the statutory authority to reinstate the plaintiffs to their positions as assistant principals. However, unlike the situation presented in Ex parte Bessemer Board of *1221 Education, the individual Board members in this case were not sued and were not made parties in this case. Only the Board and Superintendent Nichols were made parties to this case. The Board is entitled to absolute immunity, and Superintendent Nichols is not vested with the authority under § 16-8-23, Ala.Code 1975, to grant the plaintiffs the relief they request. Accordingly, we cannot conclude that this action is an action to compel Superintendent Nichols to perform a legal duty; thus, it does not fall within the first designated “exception” to § 14 immunity.
The plaintiffs also argue that this action falls within the third, fourth, and sixth “exceptions” to § 14 immunity. The plaintiffs contend that this action was brought to compel Superintendent Nichols to perform a ministerial act. However, as stated earlier, it is the Board that had the sole authority to grant the relief the plaintiffs requested. Only the Board could implement the reduetion-in-force policy, which policy the Board did implement but implemented it only as to the central staff and did not extend it to principals and teachers. If the Board had also implemented the policy as to principals and teachers and directed Superintendent Nichols to follow that policy, then it may have been argued that its implementation was a ministerial act to be performed by Nichols. However, the Board did not implement the policy as to principals. Accordingly, we cannot say that this action was brought to compel Superintendent Nichols to perform a ministerial act. Further, this action does not fall within the fourth and sixth exceptions because it was not seeking the construction of a statute under the Declaratory Judgment Act nor was there any allegation that Superintendent Nichols acted fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. Harbert, 990 So.2d at 839-40.
Because the plaintiffs have failed to demonstrate that this action falls within one of the six recognized “exceptions” to § 14 immunity, Superintendent Nichols is entitled to absolute immunity in his official capacity as a State officer. Therefore, the trial court lacked jurisdiction oyer the claims asserted against Superintendent Nichols in his official capacity, and the judgment entered against him on those claims is void. Because Superintendent Nichols is appealing from a void judgment, his appeal is due to be dismissed. Ex parte Citizens Bank, supra.

Conclusion

We dismiss the defendants’ appeal based on a lack of subject-matter jurisdiction.
APPEAL DISMISSED.
MALONE, C.J., and WOODALL, STUART, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.

. The trial court also ordered a Stage II hearing to determine what the appropriate pay rate was for each plaintiff in order to fashion a final judgment as to the amount of backpay each plaintiff was entitled to receive.

. Dickinson had been placed in a principal position before the trial court entered its final judgment.

. The defendants were required to adopt a reduction-in-force policy pursuant to § 16 — 1— 33, Ala.Code 1975.