[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 803 
The first issue in these appeals is whether the parental immunity doctrine bars civil actions by foster children against their foster parents and the commissioner of the Alabama Department of Human Resources ("DHR"), the Barbour County Department of Human Resources ("BCDHR"), and the BCDHR director and case supervisor charged with custody and care of the foster children. The second issue is whether the commissioner, the director, and the case supervisor are entitled to some form of sovereign immunity.
On January 7, 1990, eight minor foster children were residing in the home of Robert and Lois Mitchell. As a result of a fire in the foster home, six of the foster children were killed; those children were Jesse Walker, Kimberly Walker, Larry Walker, Marketta Walker, Jesse James Gilbert, and Kimberly Gilbert. The two remaining foster children, Brenda Gilbert and Kevin Bouyer, were injured in the fire. James Davis, the administrator of the deceased children's estates, sued the foster parents, BCDHR, the director and the case supervisor of BCDHR, and the commissioner of DHR. Davis also sued these defendants as conservator of the estate of Brenda Gilbert. No suit was filed on behalf of Kevin Bouyer.
The plaintiffs alleged that the fire was the result of negligence, wantonness, breach of contract, and breach of warranty and that it gave rise to liability under the Alabama Extended Manufacturer's Liability Doctrine. Also, the plaintiffs asserted 42 U.S.C. § 1983 claims against the case supervisor, the director, and the commissioner.
Each defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment, asserting the defense of parental immunity. Additionally, BCDHR, the commissioner, the director, and the case supervisor asserted the defense of sovereign immunity. The trial court denied each motion, holding that the parental immunity doctrine did not apply. However, the court also ruled that an immediate appeal of that holding was warranted. This Court granted all defendants permission to appeal. See Rule 5, A.R.App.P.
The parental immunity doctrine prohibits all civil suits brought by unemancipated minor children against their parents for the torts of their parents. The parental immunity doctrine was judicially created in 1891 by the Supreme Court of Mississippi. Hewellette v. George, 68 Miss. 703, 9 So. 885
(1891). This Court first discussed the doctrine of parental immunity in Owens v. Auto Mut. Indemnity Co., 235 Ala. 9,177 So. 133 (1937). In Owens, the administrator of the estate of a minor child sued the father's insurer when the child was killed *Page 804 
as a result of being hit by an automobile driven by the father. We held that the parental immunity doctrine barred a minor from suing his father for damages based on negligence or wantonness. The reason behind the doctrine is "the protection of family control and harmony, and [the reason] exists only where the suit, or the prospect of a suit, might disturb the family relations." Owens, 235 Ala. at 10, 177 So. at 134, citingDunlap v. Dunlap, 84 N.H. 352, 150 A. 905 (1930).
More recently, this Court created an exception to the parental immunity doctrine. In Hurst v. Capitell, 539 So.2d 264
(Ala. 1989), we held that the parental immunity doctrine does not bar suits by minor children against their parents based on sexual abuse claims. The Court held that this exception applied to natural parents, step-parents, and adoptive parents.
We must now decide whether the doctrine of parental immunity applies to foster parents and the commissioner, the BCDHR, the director, and the case supervisor charged with custody and care of the foster children.
Foster care has been defined as " 'a child welfare service which provides substitute family care for a planned period for a child when his own family cannot care for him for a temporary or extended period, and when adoption is neither desirable nor possible.' " Smith v. Organization of Foster Families,431 U.S. 816, 823, 97 S.Ct. 2094, 2099, 53 L.Ed.2d 14 (1977).
 "The goal of foster care is not to create a new 'family' unit or encourage permanent emotional ties between the child and foster parents. Foster care is designed to provide a stable, nurturing, noninstitutionalized environment for the child while the natural parent or caretaker attempts to remedy the problems which precipitated the child's removal or, if parental rights have been terminated, until suitable adoptive parents are found."
Mayberry v. Pryor, 422 Mich. 579, 374 N.W.2d 683 (1985), citingSmith, 431 U.S. at 861-62, 97 S.Ct. at 2119 (Stewart, J., concurring).
In the present case, the foster parents argue that they standin loco parentis to the foster children in their home and that this relationship warrants the application of the parental immunity doctrine. They point out that foster parents provide clothing, food, and transportation for foster children and meet their emotional needs. They argue further that functionally there is no difference between a biological family unit and a foster family unit. They contend that foster parents provide religious and social instruction to the foster children in their home. The foster parents also contend that although they are paid a supplement for each child in the home, it covers only minimal costs. They contend that if foster parents were not immune from civil suits by foster children, there would be a sharp decrease in the number of individuals willing to be foster parents.
The plaintiffs argue that the relationship between foster parents and foster children is purely contractual, and, therefore, that the parental immunity doctrine should not apply. The plaintiffs contend that the foster parent-foster child relationship is not permanent and continuous. They further argue that DHR may transfer a foster child to another foster home, without interference from the foster parents. Also, the plaintiffs point out that foster parents are paid a supplement to care for each foster child in their home and that DHR may inspect the foster home at any time. The plaintiffs assert that foster parents have no obligation of care, except through contract, and can exercise only that control dictated by DHR.
This Court concludes that the doctrine of parental immunity should be extended to foster parents in a qualified form. Specifically, we hold that foster parents may assert the defense of parental immunity against claims of simple negligence brought by foster children in their care.
Foster parents provide food, shelter, and discipline for children in their homes. Foster parents must also try to meet the emotional needs of the children. Therefore, foster parents should be afforded some protection by the parental immunity doctrine. *Page 805 
However, the use of the parental immunity doctrine by foster parents should be limited, because of the nature of foster care. Foster parents differ from natural parents and others who stand in loco parentis, because there is no relationship by blood, marriage, or adoption. Foster parents are selected and approved by DHR. Foster care is temporary and is based upon a contract with the state. Foster children can be transferred at any time, and the foster home must be monitored by DHR. Foster parents are paid a supplement for necessities of the foster children. Therefore, this Court considers it necessary to limit the parental immunity doctrine to claims of simple negligence as it relates to foster parents.
The parental immunity doctrine should also be available, in a qualified form, to the commissioner, the BCDHR, the BCDHR director, and the case supervisor charged with the care and custody of foster children. That is, they also should be able to assert the parental immunity doctrine as a defense to claims of simple negligence by foster children. Alabama has already concluded that DHR stands in loco parentis to children of unfit parents. Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939);English v. Macon, 46 Ala. App. 81, 238 So.2d 733 (1970); StateDep't of Pensions Security v. Whitney, 359 So.2d 810
(Ala.App.Civ. 1978). As DHR stands in loco parentis, so does the commissioner, the BCDHR, the director, and the case supervisor. Although they stand in place of the parent, there is no familial relationship between DHR and foster children that a lawsuit could disturb. Any acts by the commissioner, the BCDHR, the commissioner, the director, or the case supervisor that rise to wantonness should not be protected by the parental immunity doctrine. Therefore, the BCDHR, the commissioner, the director, and the case supervisor may assert the parental immunity doctrine only as to claims of simple negligence.
We note that certain other jurisdictions have abolished the parental immunity doctrine or are allowing negligence actions by minors against their parents in certain circumstances.[1] Some jurisdictions have placed limits on the use of the parental immunity doctrine as the relationship with the child moves further away from that of a parent and child.[2] As stated earlier, this Court has itself limited the application of the parental immunity doctrine in certain situations. See, Hurst v.Capitell, 539 So.2d 264.
Because, as to the defendants in this case, the parental immunity doctrine applies only to simple negligence claims, the trial court properly denied the summary judgment as to the breach of contract, breach of warranty, and AEMLD claims. The record in this case is not clear on the factual circumstances surrounding the fire. Accordingly, the trial court must determine whether the acts by the defendants alleged to give rise to liability would amount only to simple negligence or would rise to the *Page 806 
level of wantonness. If the trial court determines that the alleged acts by the foster parents, the BCDHR, the commissioner, the director, or the case supervisor, would amount only to simple negligence (e.g., as when a foster child is injured when he slips on a roller skate carelessly misplaced inside the foster home), then the parental immunity doctrine would bar the negligence claim by the foster children. If the alleged acts amounted to wantonness (e.g., as when a foster child is injured because of the foster parent's driving an automobile under the influence of alcohol), then the wantonness claim by the foster children would not be barred by the parental immunity doctrine.
Although the trial court, in denying the summary judgment, ruled only on the parental immunity doctrine, we will also discuss the defense of sovereign immunity asserted by the BCDHR, the commissioner, the director, and the case supervisor.
Article I, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." The State and its agencies have absolute immunity from suit in any court under this provision.Barnes v. Dale, 530 So.2d 770 (Ala. 1988). Clearly, DHR and the BCDHR, as State agencies, can assert the defense of absolute immunity from suit. Therefore, all the claims by the foster children against BCDHR are barred by the doctrine of sovereign immunity.
State officers and employees, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the State. Barnes,530 So.2d 770. We note that no state officer or employee can escape individual tort liability by arguing that his "mere status as a state official cloaks him with the state's constitutional immunity." Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989). A state employee is not protected by § 14 when he acts "willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law." Phillips, 555 So.2d at 83. Also, a state employee is not immune from a suit to compel the performance of a legal duty, a suit to enjoin the enforcement of an unconstitutional law, a suit to compel performance of a ministerial act, or a suit brought under the Declaratory Judgments Act. Id.
In the case at bar, the dispositive issues concerning sovereign immunity are: (1) whether the suit against the commissioner, the director, and the case supervisor is, in effect, one against the State and, if not, (2) whether the commissioner, the director, and the case supervisor are entitled to substantive or qualified immunity because they were engaged in the exercise of a discretionary public function.
To determine whether the action is, in effect, one against the State, a court must consider such factors as the nature of the action and the relief sought. Phillips v. Thomas,555 So.2d 81 (Ala. 1989). Section 14 prohibits suits against state officers and employees in their official capacity when a result favorable to the plaintiff would directly affect a contract or property right of the State. Milton v. Espey, 356 So.2d 1201
(Ala. 1978).
A wrongful death action against an individual state employee or official is not within the ambit of § 14 protection. Such a claim, by virtue of its nature and the relief demanded, in no way seeks to circumvent the prohibition of § 14. See, Barnes v.Dale, 530 So.2d 770 (Ala. 1988) (wrongful death action against state employees based on negligence and wantonness not within the protection of § 14); DeStafney v. University of Alabama,413 So.2d 391, 395 (Ala. 1981) (personal injury action against individual state employees not within the protection of § 14).
We now move to the question of whether qualified or substantive immunity is available.
 "Qualified or substantive immunity is available to a state officer or employee acting within the general scope of his authority, but only when certain circumstances are present. 'Whether a particular defendant is engaged in a protected discretionary function and is thereby immune from liability for injuries he causes *Page 807 
is a question of law to be decided by the trial court.' "
Phillips, 555 So.2d at 84, quoting Grant v. Davis, 537 So.2d 7,8 (Ala. 1988).
The following factors should be considered in determining whether a state officer or employee is engaged in a discretionary function: the nature and importance of the function that the officer or employee is performing; the extent to which passing judgment on the exercise of discretion will amount necessarily to passing judgment on the conduct of a coordinate branch of government; the extent to which the imposition of liability would impair the free exercise of discretion by the officer or employee; the extent to which the ultimate financial responsibility will fall on the officer or employee; the likelihood that harm will result to members of the public if the action is taken; the nature and seriousness of the type of harm that may be produced; and the availability to the injured party of other remedies and other forms of relief. Barnes v. Dale, 530 So.2d 770, 784 (Ala. 1988).
The trial court erred in not granting BCDHR sovereign immunity as a matter of law on all the claims asserted by the plaintiffs. In regard to the commissioner, the director, and the case supervisor, the record is not clear as to what acts were performed by those officials or employees. Therefore, we must remand this case to the trial court for a determination of whether the acts performed by the commissioner, the director, and the case supervisor were discretionary or ministerial; that determination must be made in order to determine whether these employees or officials are protected from suit by the doctrine of substantive immunity.
In conclusion, we hold that all of the claims against BCDHR are barred by the sovereign immunity doctrine. The trial court must determine whether the commissioner, the director, and the case supervisor are entitled to substantive immunity; that determination depends on whether the acts they allegedly committed were ministerial or discretionary. If it determines that they are not entitled to substantive immunity, the trial court should then decide whether the parental immunity doctrine, in its qualified form, applies to the commissioner, the director, the case supervisor, or the foster parents.
Based on the foregoing, the order is reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ADAMS, J., concurs in the result
[1] Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 (1970); Gibsonv. Gibson, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648
(1971); Ard v. Ard, 395 So.2d 586 (Fla.App. 1981), aff'd in part, 414 So.2d 1066 (Fla. 1982); Larson v. Buschkamp, 105 Ill. App.3d 965, 61 Ill.Dec. 732, 435 N.E.2d 221 (1982); Turner v.Turner, 304 N.W.2d 786 (Iowa 1981); Nocktonick v. Nocktonick,227 Kan. 758, 611 P.2d 135 (1980); Rigdon v. Rigdon,465 S.W.2d 921 (Ky. 1970); Black v. Solmitz, 409 A.2d 634 (Me. 1979); Sweeney v. Sweeney, 402 Mich. 234, 262 N.W.2d 625
(1978); Anderson v. Stream, 295 N.W.2d 595 (Minn. 1980); Rupertv. Stienne, 90 Nev. 397, 528 P.2d 1013 (1974); Briere v.Briere, 107 N.H. 432, 224 A.2d 588 (1966); France v. A.P.A.Transport Corp., 56 N.J. 500, 267 A.2d 490 (1970); Kirchner v.Crystal, 15 Ohio St.3d 326, 15 Ohio B.R. 452, 474 N.E.2d 275
(1984); Winn v. Gilroy, 296 Or. 718, 681 P.2d 776 (1984); Falcov. Pados, 444 Pa. 372, 282 A.2d 351 (1971); Jilani v.Jilani, 767 S.W.2d 671 (Tex. 1988); Wood v. Wood, 135 Vt. 119,370 A.2d 191 (1977); Howes v. Hansen, 56 Wis.2d 247,201 N.W.2d 825 (1972).
[2] Andrews v. Otsego County, 112 Misc.2d 37, 446 N.Y.S.2d 169
(1982) (child has a cause of action against a foster parent for negligent supervision; foster parent is not entitled to parental immunity); Mayberry v. Pryor, 422 Mich. 579,374 N.W.2d 683 (1985) (parental immunity from tort liability does not extend to foster parents); Goller v. White, 20 Wis.2d 402,122 N.W.2d 193 (1963) (parental immunity not available to foster parents except where alleged negligence involved an exercise of parental authority and negligence involved ordinary parental discretion).