Shane Jenks and Kelly Jenks, parties in two cases pending in the trial court that were consolidated, appeal from the order of the trial court vacating an arbitration award in their favor and against Mark Harris and Mark Harris Homes, L.L.C. ("Harris Homes"). The circuit court clerk entered the trial court's order in each of the two cases. The Jenkses, therefore, filed two appeals, one in each case. We affirm in part, reverse in part, and render a judgment in favor of the Jenkses.
 Facts and Procedural History
In September 1998, the Jenkses entered into a contract with Richard Dukes Homes, LLC ("Dukes Homes"), for the construction of a house ("the contract"). The contract contained the following arbitration provision:
 "[Dukes Homes] and the [Jenkses] acknowledge that this Agreement necessarily involves interstate commerce by virtue of the materials and components contained in the Dwelling and each of the undersigned hereby agrees to arbitrate any and all disputes arising under or related to this Agreement and to be bound by the decision of the arbitrator which shall be conducted pursuant to the Construction Industry Rules of the American Arbitration Association."
In 1999, Dukes Homes entered into an agreement with Madison Residential Developers, Inc. ("MRD"), pursuant to which MRD agreed to complete construction of the Jenkses' house. Shortly after MRD entered into the agreement with Dukes Homes, Mark Harris, an employee of MRD, met with the Jenkses. He purportedly explained to the Jenkses that MRD was completing the house for Dukes Homes and discussed certain matters relating to the construction project.
Apparently, Dukes Homes and MRD stopped work on the house before it was completed. The Jenkses hired another contractor to complete the construction on the house. Subsequently, portions of the work on the house performed by subcontractors hired by MRD, including the exterior brick and some flooring, had to be completely replaced.
In September 2001, the Jenkses filed a complaint naming as defendants Dukes Homes; Richard Dukes, Dukes Homes' "chief manager"; and "Mark Harris d/b/a Madison Residential" (case no. CV-01-1948). The complaint alleged that the house contained numerous construction defects, that the work was not completed in a workmanlike manner, that the defendants failed to comply with certain plans and specifications the Jenkses had provided, and that the defendants failed to hire competent subcontractors. Additionally, the complaint alleged that the defendants made numerous intentional and negligent misrepresentations. As a result, the Jenkses claimed, they incurred additional costs in completing construction of the house.
Harris filed an answer to the Jenkses' complaint. Dukes Homes and Richard Dukes filed a motion to compel the Jenkses to arbitrate their claims pursuant to the arbitration provision in the contract. The trial court granted the motion to compel arbitration on April 18, 2002.
The Jenkses subsequently filed a demand for arbitration with the American Arbitration Association ("AAA") against Dukes Homes, Richard Dukes, Mark Harris, and Harris Homes. Harris sent a letter to the AAA indicating that he personally was not involved in the construction of the Jenkses' house and that MRD was not subject to the arbitration clause in the contract because it was not a party to the contract. *Page 881 
The arbitration subsequently took place, and Mark Harris participated in the proceedings, apparently without the benefit of counsel. On April 28, 2004, the arbitrator rendered an award in favor of the Jenkses and against Dukes Homes and Richard Dukes in the amount of $60,000, and against Mark Harris and Harris Homes in the amount of $60,000.
Subsequently, Harris and Harris Homes initiated an action in the trial court seeking to have the trial court set aside and vacate the arbitration award (case no. CV-04-1143). Harris and Harris Homes alleged numerous grounds for setting aside the award. This action was subsequently consolidated with case CV-01-1948.
On July 8, 2004, the trial court held a hearing on Harris and Harris Homes' request to set aside the arbitration award. Harris testified at the hearing. He stated that he worked for, and was a part owner of, MRD, that he kept the books for MRD and supervised some of its jobs, that William Boyanton was the day-to-day supervisor of the construction of the Jenkses' house for MRD, that Harris spent a total of two hours on the Jenkses' house, and that payments by the Jenkses were made out to MRD and not to him individually. Harris thus alleged that he never individually contracted or agreed to be personally involved or to have personal liability in the construction of the Jenkses' house, and that if any entity had any responsibility for the allegedly defective construction, it would be MRD. At the conclusion of the hearing, the trial court granted the motion to set aside the arbitration award against Harris and Harris Homes.
Subsequently, the Jenkses, Dukes Homes, and Richard Dukes filed a stipulation, agreeing that Dukes Homes and Dukes be dismissed from case no. CV-01-1948. In an order dated October 18, 2004, the trial court dismissed Dukes Homes and Dukes, and they are no longer parties in these cases. The Jenkses and Harris later stipulated that Harris Homes should not have been a party to the arbitration because Harris Homes did not exist at the time material to this case. Therefore, the Jenkses make no argument regarding that portion of the trial court's order vacating the award against Harris Homes. The Jenkses then filed two separate appeals to this Court (case nos. 1031771 and 1031815).
On October 28, 2005, we dismissed the Jenkses appeals, without an opinion. In dismissing the appeals, we issued an order stating:
 "On May 10, 2004, Mark Harris and Mark Harris Homes, LLC, filed with the clerk of the Madison Circuit Court a copy of the arbitration award issued by the American Arbitration Association on April 28, 2004, in an arbitration demand by Shane and Kelly Jenks and an application and motion to vacate the arbitration award. Mark Harris and Mark Harris Homes, LLC, stated in their application that they were invoking the trial court's jurisdiction to vacate the arbitration award under § 6-6-15, Ala. Code 1975, which provides:
 "`Either party may appeal from an award under this division. Notice of the appeal to the appropriate appellate court shall be filed within 10 days after receipt of notice of the award and shall be filed with the clerk or register of the circuit court where the action is pending or, if no action is pending, then in the office of the clerk or register of the circuit court of the county where the award is made. The notice of appeal, together with a copy of the award, signed by the arbitrators or a majority of them, shall be delivered with the file of papers or with the submission, as the case may be, to the court to which the award is *Page 882 
returnable; and the clerk or register shall enter the award as the judgement of the court. Thereafter, unless within 10 days the court shall set aside the award for one or more of the causes specified in Section 6-6-14, the judgment shall become final and an appeal shall lie as in other cases. . . .'
"On July 8, 2004, the trial court issued an order purporting to set aside the arbitration award. However, under § 6-6-15, Ala. Code 1975, before the trial court could review the award, the circuit court clerk was required to `enter the award as the judgement of the court.' Our review of the record reveals that the circuit court clerk did not enter the arbitration award as the trial court's preliminary judgment.
"We recognize that the procedure for obtaining jurisdiction to review an arbitration award under § 6-6-15, Ala. Code 1975, is far from clear.[1] Thus, in the absence of a clear procedure for treating challenges to an arbitration award brought under § 6-6-15, Ala. Code 1975, and in light of the confusing nature of the statutory language, we deem it appropriate to issue an interim curative order in this case.
"In the present posture of their appeals, Shane and Kelly Jenks ask this Court to review the trial court's July 8, 2004, order setting aside the arbitration award.[2]
However, because the circuit clerk had not entered the arbitration award as the judgment of the court, the trial court's order vacating that arbitration award is void. `[W]here a judgment appealed from is void for want of jurisdiction, we have no alternative but to dismiss the appeal.' City ofHuntsville v. Miller, 271 Ala. 687, 689, 127 So.2d 606,608 (1961).
"IT IS THEREFORE ORDERED THAT, upon receipt of this order, the trial court shall instruct the Circuit Court Clerk of Madison County to enter the arbitration award as the judgment of the court.
 "`Thereafter, unless within 10 days the court shall set aside the award for one or more of the causes specified in Section 6-6-14, the judgment shall become final and an appeal shall lie as in other cases.'
"Thus, if the trial court fails to act within the 10-day period allowed by § 6-6-15, Ala. Code 1975, the arbitration award will become the trial court's final judgment, which Mark Harris and Mark Harris Homes, LLC, shall be entitled to appeal.[3] If, however, the trial court sets aside the arbitration award within the 10-day period, Shane and Kelly Jenks shall be entitled to appeal the trial court's order setting aside the arbitration award. IT IS FURTHER ORDERED that these appeals are dismissed.
"1 This Court has asked its standing committees on the Alabama Rules of Civil Procedure and the Alabama Rules of Appellate Procedure to draft rules clarifying the appropriate procedures under § 6-6-15, Ala. Code 1975.
"2 Shane and Kelly Jenks initially sued Mark Harris on September 7, 2001 (case no. CV-01-1948). The trial court stayed the Jenkses' action during the arbitration proceedings. After the arbitration award was handed down, Mark Harris and Mark Harris Homes, LLC, filed an application and motion to vacate the arbitration award. It was entered on the trial court's docket sheet as a separate legal action (case no. CV-04-1143). The circuit court clerk entered the trial court's order vacating the arbitration award as the judgment of the trial court in each of those cases. The Jenkses, *Page 883 
therefore, filed two appeals, one in each case.
"3 For timing purposes, Harris's application and motion to vacate the arbitration award filed on May 10, 2004, shall be treated as the notice of appeal required by § 6-6-15, Ala. Code 1975."
On November 3, 2005, Harris filed in the trial court in both cases a motion entitled "Emergency Motion to Vacate Arbitration Award" ("the emergency motion"). The motion stated that it was an "emergency request" because under Ala. Code 1975, § 6-6-15, the trial court had only 10 days from the date the arbitration award was entered to vacate the award.
In an order dated November 21, 2005, the circuit clerk was ordered to enter the arbitrator's award as a judgment of the trial court. This was done on November 22. In an order dated November 23, 2005, the trial court granted Harris's motion to vacate the April 28, 2004, arbitration award.
The Jenkses filed a postjudgment motion, which was denied. They again filed two appeals to this Court, one in each action.
 Discussion
As a threshold issue, Harris contends that the Jenkses' appeal from the order vacating the arbitration award is an appeal from a nonfinal judgment because, Harris says, case no. CV-01-1948 remains pending. See Dzwonkowski v. Sonitrol of Mobile,Inc., 892 So.2d 354, 363 (Ala. 2004) ("A nonfinal judgment will not support an appeal.") However, Ala. Code 1975, § 6-6-15, states that when an arbitration award is set aside by the trial court, "such action shall be a final judgment from which an appeal shall lie as in other cases." Therefore, the trial court's order setting aside the arbitration award is a final judgment from which an appeal may lie.
In the emergency motion, Harris argued, among other things, that he could not have been compelled to arbitrate the claims against him in this case. The emergency motion states: "The arbitration award is void because the arbitrator exceeded his power in entering an award against an individual who was wrongfully compelled to arbitrate as a nonsignatory to the contract containing the arbitration clause. . . ." Although there are numerous exceptions, the general rule is that "the right to arbitrate is contractual[;] . . . therefore, a party may not be compelled to arbitrate a dispute, unless it has agreed to do so." ECS, Inc. v. Goff Group, Inc.,880 So.2d 1140, 1145 (Ala. 2003). Harris argues that because he was not a signatory to the contract, he could not be compelled to arbitrate under its arbitration provision. Thus, he contends, the arbitrator erred in entering an award against him.
The Jenkses, on the other hand, argue that Harris should have appealed from the trial court's order granting the motion to compel arbitration of the claims against him. Harris's failure to appeal from that order, the Jenkses maintain, waived any argument that the arbitration provision did not apply to him. We agree.
"A direct appeal is the proper procedure by which to seek review of a trial court's order granting or denying a motion to compel arbitration." Conseco Fin. Corp.-Alabama v.Salter, 846 So.2d 1077, 1080 (Ala. 2002). See also Rule 4(d), Ala. R.App. P. Harris argues, however, that he could not have appealed from the trial court's order compelling arbitration:
 "[A]t the time Harris and the other parties were compelled to arbitration, there was no right to appeal such a decision. On April 28, 2002, Circuit Court Judge Laura Hamilton, in case number CV-01-1948, *Page 884 
1948, compelled the case to arbitration. For some reason, the Jenks[es] argue that Harris' failure to file an interlocutory appeal of the order compelling the case to arbitration under Rule 4(d) of the Alabama Rules of Appellate Procedure prevents Harris from arguing that he was not subject to the arbitration agreement. . . . However, the case was compelled to arbitration before the October 1, 2002, effective date of the amendment to Rule 4(d), Ala. R.App. P., that allows an appeal of an order granting or denying a motion to compel arbitration. So, contrary to Jenks[es]' argument, Harris could not, in fact, appeal the decision compelling the case to arbitration. Jenks[es]' argument is misplaced, [and] not supported by Alabama law."
Harris's brief at 47-48.
It is true that before this Court adopted of Rule 4(d), Ala. R.App. P., a party who was compelled to arbitration was not required to appeal such an order:
 "Before the adoption of Rule 4(d) . . ., an order granting a motion to compel arbitration was considered an interlocutory order reviewable only by a petition for a writ of mandamus. Bowater, Inc. v. Zager, 901 So.2d 658 (Ala. 2004). When mandamus relief was not sought, however, the order granting arbitration did not thereby become `final,' but remained interlocutory in character, subject to review, if desired, as a part of any appeal taken upon final disposition of the case."
Wessex House of Jacksonville, Inc. v. Kelley,908 So.2d 226, 228-29 (Ala. 2005).
However, Rule 4(d)"which became effective October 1, 200i, and not October 1, 2002, as Harris suggests[1] — altered this principle:
 "[Rule 4(d), Ala. R.App. P.,] now evenhandedly states that both an order granting and an order denying a motion to compel arbitration are `appealable as a matter of right' within 42 days from date of the entry of the order. The `finality' of the order is thus assured, because failure to take an appeal from it within the 42-day time period forecloses later appellate review."
Bowater Inc. v. Zager, 901 So.2d 658, 664 (Ala. 2004) (emphasis added). The decision to compel Harris to arbitrate was the decision of the trial court, not the arbitrator. Thus, Harris's failure to appeal the trial court's decision within 42 days bars his attempt to challenge it once arbitration has been completed.
Harris's emergency motion and his brief on appeal indicate that he challenged the arbitration award on the ground that the arbitrator manifestly disregarded the law. See BirminghamNews Co. v. Horn, 901 So.2d 27, 50 (Ala. 2004) (recognizing "manifest disregard of the law" as a ground available for review of an arbitration award).[2] Specifically, Harris *Page 885 
argues that the arbitrator erroneously held Harris liable for the acts of his employer, MRD, and erred in holding him liable even though he allegedly had nothing to do with the construction of the Jenkses' house. Harris claims that he was "nothing other than a laborer . . . rather than a president or administrator" and that he was not even the supervisor of the project. Harris's brief at 35. Harris claims that he never "stepped out of his duties" with MRD and that he never personally contracted with the Jenkses.[3]
 "On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration."
Maxus, Inc. v. Sciacca, 598 So.2d 1376, 1380
(Ala. 1992), overruled on other grounds, as recognized inTerminix Int'l Co. v. Jackson, 628 So.2d 357
(Ala. 1993) (citations omitted). Additionally, "`"courts are generally prohibited from vacating an arbitration award on the basis of errors of law or interpretation."'" McKee v.Hendrix, 816 So.2d 30, 35 (Ala.Civ.App. 2001) (quotingJ.A. Jones Constr. Co. v. Flakt, Inc.,731 F.Supp. 1061, 1064 (N.D.Ga. 1990), quoting in turn O.R. Sec, Inc. v.Professional Planning Assocs., Inc., 857 F.2d 742, 746
(11th Cir. 1988)).
Judicial review under the "manifest disregard of the law" ground "is severely limited and . . . the party challenging an award on this ground bears a heavy burden." BirminghamNews, 901 So.2d at 50. Furthermore,
 "a party seeking to vacate an arbitration award on the basis of manifest disregard of the law must establish that `(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'"
Birmingham News, 901 So.2d at 52 (quoting Halliganv. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998)) (footnote omitted).
The Jenkses claim that they alleged fraud and misrepresentation claims against Harris individually, and that those claims were submitted to the arbitrator. Specifically, the Jenkses contend that Harris misrepresented facts regarding the employment of subcontractors and the supervision of those subcontractors. The Jenkses' complaint in arbitration further alleged that Harris willfully or recklessly misrepresented these facts to the Jenkses. *Page 886 
Moreover, at the July 8, 2004, hearing, Harris admitted that testimony at the arbitration proceeding indicated that he had told the Jenkses that he would employ qualified subcontractors but that the work by the subcontractors had been poor. Specifically, Harris testified that he "was involved with the commission of the subcontractor." Additionally, the following exchange took place:
 "[Jenkses' counsel:] And you were in arbitration of this case and you heard a licensed architect and a licensed home-building inspector say the work was well below par in the State of Alabama, were you not?
 "[Harris:] I heard that testimony.
 ". . . .
 "Q. And that in his professional opinion as a licensed architect, [the house] would need to be torn down?
 "A. The brick, yes.
 "Q. And the cost of repair of that brick would be in the neighborhood of a hundred to a hundred and fifty thousand dollars?
 "A. Yes, he did testify to that.
 "Q. And you heard a licensed home inspector in the State of Alabama give the same type of testimony, did you not?
 "A. I did.
 "Q. Okay. And yet you had told the Jenkses that you would employ and use your efforts to get qualified [subcontractors] who could do quality work in this area, did you not?
 "A. I did, but the Jenkses were given the choice between brick subcontractors."
The Jenkses' fraud and misrepresentation claims as a basis for holding Harris individually liable was specifically discussed at the hearing:
 "MR. MORRIS [the Jenkses' counsel]: If I sue a truck driver, who is working for a company, Judge, I can sue the company and the truck driver. That is the basis of this suit here. I sued the corporation, the man doing the work for the corporation individually because he didn't do his job.
 "MR. CONCHIN [Harris's counsel]: You have no tort claims.
 "MR. MORRIS: Yes, sir, I do.
 "MR. CONCHIN: You need to read your complaint again. We've got a breach of contract.
 "MR. MORRIS: There is an intentional misrepresentation in this claim, Judge.
 "MR. CONCHIN: Where —"
 ". . . .
 "THE COURT: Well, . . . there is a breach of contract, breach of warranty."
 "MR. CONCHIN: That's it.
 "THE COURT: Negligent breach of contract and misrepresentation count.
 "MR. MORRIS: Judge, here is the amended claim for arbitration, which has a fraud, misrepresentation count, Count Number Four, in it which was arbitrated.
 "THE COURT: All right. Make that an exhibit."
The Jenkses' fraud and misrepresentation claims against Harris individually were not addressed by Harris in either the emergency motion or the brief in support of that motion, and they are not addressed by Harris on appeal. The Jenkses contend that those claims were submitted to the arbitrator, that the arbitrator considered them, and that the arbitrator could have found Harris individually liable under them. We agree. For all that appears, this issue was presented to the arbitrator and can form a legal basis for an arbitration award against Harris individually. *Page 887 
Because the Jenkses presented claims against Harris individually alleging tortious conduct on his part, we cannot conclude that Harris met the "heavy burden" of establishing that the arbitrator manifestly disregarded the law in finding Harris personally liable. Therefore, we reverse the trial court's order vacating the arbitration award against Harris and render a judgment in favor of the Jenkses.
 Conclusion
The portion of the trial court's order vacating the arbitration award against Harris Homes is affirmed, the portion vacating the award against Harris is reversed, and, to that extent, we render a judgment in favor of the Jenkses.
1050686 — AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
1050687 — AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
COBB, C.J., and SEE, WOODALL, and PARKER, JJ., concur.
[1] See Court Comment to Amendment to Rule 4(a)(1) and Adoption of Rule 4(d) Effective October 1, 2001; Ex parteSouthern United Fire Ins. Co., 843 So.2d 151, 155 n. 3 (Ala. 2002) ("This Court adopted Rule 4(d), Ala. R.App. P., effective October 1, 2001, to provide that orders grantingor denying motions to compel arbitration are reviewable by direct appeal.").
[2] In the emergency motion, Harris alleged other grounds challenging the arbitrator's award. These grounds are not argued on appeal. Harris does contend in his brief on appeal that the arbitration award was due to be set aside because it was "arbitrary and capricious." However, we have previously declined to recognize such a ground:
 "The [Birmingham News Company], in addition to asserting that the arbitrators exceeded their powers and acted in `manifest disregard of the law,' claims that each award fails to `derive its essence from the underlying contract,' was `arbitrary and capricious,' and was `completely irrational.' . . . We decline the News's invitation to adopt any of these other grounds of review. We deem these grounds too vague for application in the context of arbitration awards where the arbitrators have neither exceeded their powers nor manifestly disregarded the law."
Birmingham News, 901 So.2d at 52-53.
[3] Contrary to Harris's assertions that he was "nothing other than a laborer . . . rather than a president or administrator," Harris's own testimony at the July 8, 2004, hearing showed that he owned 25% of the stock in MRD and was one of only two stockholders; that he was involved in some of the business decisions of the company, specifically, both he and the other shareholder were in charge MRD's "day-to-day operation"; that he was a superintendent of some of the corporation's jobs; that he kept the books for the corporation; and that he was involved in "commissi on[ing]" the subcontractors used to perform work on the Jenkses' house.