WOODALL, Justice.
In May 2008, seven-year-old Jordan Alexander Robertson was placed in foster *665 care at the home of Verlin Spurgeon and Carol Spurgeon. In June 2008, Jordan drowned in the Spurgeons’ swimming pool. James C. Brakefíeld, as administrator of Jordan’s estate (“Brakefíeld”), sued the Spurgeons, among others, in the Walker Circuit Court, alleging that they had negligently and/or wantonly caused Jordan’s death. The Spurgeons moved the circuit court for a summary judgment, alleging, among other things, that the claims were barred by the doctrines of parental, State, and State-agent immunity. The circuit court denied the motion. The Spurgeons have petitioned this Court for a writ of mandamus directing the circuit court to dismiss the claims against them. We grant their petition in part and issue the writ, directing the circuit court to dismiss the negligence claims against the Spur-geons. In all other respects, we deny the petition.

Facts and Procedural History

On May 20, 2008, the Alabama Department of Human Resources (“DHR”) removed Jordan from the home of his biological parents and placed him in foster care at the Spurgeons’ home. On June 8, 2008, the Spurgeons had six foster children, including Jordan, living with them.
In their petition, the Spurgeons allege the following facts:
“On June 8, 2008, the day of the incident, Carol Spurgeon placed Jordan Robertson in the living room where he was watching television. Carol Spur-geon went to take a shower. Verlin Spurgeon was either in the master bedroom putting on his clothes for the day or in the kitchen. The kids were in the living room when he was in the kitchen as he and Carol were watching the children. At the time the Spurgeons discovered Jordan Robertson was missing from inside the house, the back doors to the porch were locked and the working alarms had not gone off. Also at the time the Spurgeons discovered Jordan Robertson was missing from inside the house, the front door was locked and the alarm had not been triggered. The doggy door could not be accessed because the solid door was closed and locked. The door leading from the screen porch to the pool was closed and the combination lock was locked.”
Petition, at 11.
Carol testified in her deposition that, after she had finished her shower that day, one of the children told her that Jordan was missing. After searching for 15 to 20 minutes, the Spurgeons found Jordan lying at the bottom of their outdoor swimming pool. The Spurgeons pulled Jordan from the pool, telephoned emergency 911, and began CPR. Jordan was flown to Children’s Hospital in Birmingham, where he died a few days later from the injuries he had suffered while in the pool.
On June 8, 2009, Brakefíeld sued the Spurgeons and others, alleging, among other things, that the Spurgeons had proximately caused Jordan’s death by:
“A. Negligently and/or wantonly failing to maintain the premises of the home in a reasonably safe condition;
“B. Negligently and/or wantonly failing to comply with the minimum standards for foster homes and swimming pool areas as prescribed by DHR;
“C. Negligently and/or wantonly failing to supervise [Jordan];
“D. Negligently and/or wantonly failing to establish and/or enforce reasonable and adequate rules and procedures for providing a safe environment, especially regarding use of the swimming pool;
“E. Negligently and/or wantonly failing to discover and/or eliminate unsafe conditions or hazards when the defen *666 dants knew or in the exercise of reasonable care, should have known, that the conditions presented potential hazards to minor children.”
On May 24, 2011, the Spurgeons moved the circuit court for a summary judgment on the claims against them. On June 8, the circuit court held a hearing on the summary-judgment motion. The morning of the hearing, Brakefield filed a brief in opposition to the motion. At the hearing, the Spurgeons asked the circuit court to strike the brief as untimely and to strike photographs of the Spurgeons’ property taken after Jordan was found in the pool and introduced by Brakefield to show remedial measures taken by the Spurgeons following Jordan’s drowning. The circuit court gave the Spurgeons until June 18, 2011, to file written motions to strike the brief and the photographs on the grounds stated. However, on June 10, the circuit court denied the Spurgeons’ summary-judgment motion.
The Spurgeons timely petitioned this Court for a writ of mandamus, arguing that the circuit court should have dismissed the claims against them on the grounds of parental, State, and State-agent immunity and that the circuit court erred in failing to strike Brakefield’s brief filed in opposition to their motion and the photographs.

Standard of Review

“A writ of mandamus is an extraordinary remedy, and it ‘will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’” Ex parte Butts, 775 So.2d 173,176 (Ala.2000) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)). “ “While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion grounded on a claim of immunity is reviewable by petition for writ of mandamus.’ ” Ex parte Turner, 840 So.2d 132, 135 (Ala.2002) (quoting Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000)) (emphasis omitted).

Analysis

The Spurgeons first argue that “[t]he law is clear that foster parents such as the Spurgeons are entitled to parental immunity for [Brakefield’s] negligence claims.” Petition, at 16. In Mitchell v. Davis, 598 So.2d 801, 803 (Ala.1992), a case in which six foster children died as a result of a fire in the foster home, this Court addressed “whether the parental immunity doctrine bars civil actions by foster children against their foster parents.” This Court stated:
“The parental immunity doctrine prohibits all civil suits brought by uneman-cipated minor children against their parents for the torts of their parents.... The reason behind the doctrine is ‘the protection of family control and harmony, and [the reason] exists only where the suit, or the prospect of a suit, might disturb the family relations.’ Owens [v. Auto Mut. Indemnity Co.], 235 Ala. [9,] 10, 177 So. [133,] 134 [(1937)], citing Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905 (1930).
“More recently, this Court created an exception to the parental immunity doctrine. In Hurst v. Capitell, 539 So.2d 264 (Ala.1989), we held that the parental immunity doctrine does not bar suits by minor children against their parents based on sexual abuse claims. The Court held that this exception applies to natural parents, stepparents, and adop *667 tive,parents.[1]
“Foster parents provide food, shelter, and discipline for children in their homes. Foster parents must also try to meet the emotional needs of the children. Therefore, foster parents should be afforded some protection by the parental immunity doctrine. However, the use of the parental immunity doctrine by foster parents should be limited, because of the nature of foster care. Foster parents differ from natural parents and others who stand in loco parentis, because there is no relationship by blood, marriage, or adoption. Foster parents are selected and approved by DHR. Foster care is temporary and is based upon a contract with the state. Foster children can be transferred at any time, and the foster home must be monitored by DHR. Foster parents are paid a supplement for necessities of the foster children. Therefore, this Court considers it necessary to limit the parental immunity doctrine to claims of simple. negligence as it relates to foster parents.”
Mitchell, 598 So.2d at 803-05 (emphasis added).
Like the administrator of the deceased foster children’s estates in Mitchell, Brakefield has alleged claims of both negligence and wantonness against the Spur-geons with regard to Jordan’s death. The Spurgeons argue that, pursuant to this Court’s decision in Mitchell, Brakefield’s “claims of negligence ... are due to be dismissed.” Petition, at 18. Brakefield concedes that “Mitchell affords the Spur-geons protection for negligently allowing” Jordan to drown in their swimming pool. Brakefield’s brief, at 11. Nevertheless, Brakefield invites the Court to overrule Mitchell, arguing that, “[i]f there were ever circumstances, or facts, to allow an exception to parental immunity to be carved out for negligence, the facts of this *668 case would be ones that would call for such an exception.” Brakefield’s brief, at 11.
We agree with Brakefield and the Spur-geons that, under the rule set forth in Mitchell, Brakefield’s negligence claims against the Spurgeons are barred by the doctrine of parental immunity. Thus, unless we choose to depart from the holding in Mitchell, the Spurgeons are entitled to the dismissal of Brakefield’s negligence claims against them.
Brakefield argues
“that other jurisdictions have abolished parental immunity or are allowing negligence actions to go forward by minors against their parents, and that some jurisdictions have placed limits on parental immunity when the relationship moves away from parent and child. Also, other jurisdictions have held that foster parents are not immune from tort liability.”
Brakefield’s brief, at 13 (citations omitted). Brakefield also argues that “the Spurgeons only had custody of Jordan for just over two weeks” and that “Jordan was removed from their home and placed in respite care with a different family on two separate occasions during [those two weeks].” Id. at 14. Further, Brakefield argues that “[floster parents should not be afforded parental immunity for negligence when their home is just a temporary holding place for a child,” id.; that “foster parents[, unlike birth parents,] are paid for each foster child they take in,” id. at 16; and that “foster parents ... have [m]ini-mum [s]tandards spelled out for them to follow” in caring for foster children. Id.
We do not find these arguments persuasive. First, this Court acknowledged in Mitchell that other jurisdictions have abolished or limited the parental-immunity doctrine but concluded, nevertheless, that in Alabama the parental-immunity doctrine extends to foster parents with regard to simple negligence claims. See Mitchell, 598 So.2d at 805. As noted previously, this Court stated: “Foster parents provide food, shelter, and discipline for children in their homes. Foster parents must also try to meet the emotional needs of the children. Therefore, foster parents should be afforded some protection by the parental immunity doctrine.” Mitchell, 598 So.2d at 804-05.
Moreover, the Court in Mitchell took into account distinctions between birth parents and foster parents in deciding to extend parental immunity to foster parents for negligence claims. We stated:
“[T]he use of the parental immunity doctrine by foster parents should be limited, because of the nature of foster care. Foster parents differ from natural parents and others who stand in loco par-entis, because there is no relationship by blood, marriage, or adoption. Foster parents are selected and approved by DHR. Foster care is temporary and is based upon a contract with the state. Foster children can be transferred at any time, and the foster home must be monitored by DHR. Foster parents are paid a supplement for necessities of the foster children. Therefore, this Court considers it necessary to limit the parental immunity doctrine to claims of simple negligence as it relates to foster parents.”
Mitchell, 598 So.2d at 805.
Brakefield has not advanced any compelling reason for this Court to deviate from the rule set forth in Mitchell. Therefore, we conclude that Mitchell is controlling in this case, that the negligence claims against the Spurgeons are barred by the doctrine of parental immunity, and that the Spurgeons have demonstrated a clear legal right to have those claims dismissed.
Brakefield has also alleged claims of wantonness against the Spurgeons. *669 The Spurgeons do not argue that they are entitled to parental immunity on the wantonness claims, and, indeed, our decision in Mitchell makes it clear that such claims against foster parents are not barred by the parental-immunity doctrine. Mitchell, 598 So.2d at 805-06 (“[T]he trial court must determine whether the acts by the defendants alleged to give rise to liability would amount only to simple negligence or would rise to the level of wantonness.... If the alleged acts amounted to wantonness ..., then the wantonness claim by the foster children would not be barred by the parental immunity doctrine.”).
The Spurgeons do argue that all of Brakefield’s claims against them are barred by the doctrine of State immunity, pursuant to this Court’s decision in Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 881 (Ala.2008). In that case, this Court recognized that “ ‘Section 14[, Alabama Constitution of 1901,] prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State.’” 990 So.2d at 839 (quoting Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004)). Although the Spurgeons correctly assert that DHR is a State agency, see Mitchell, 598 So.2d at 806, they have cited no authority indicating that foster parents are considered officials or agents of the State for immunity purposes.
In Ex parte Showers, 812 So.2d 277, 281 (Ala.2001), this Court stated:
“Rule 21(a), Ala. R.App. P., requires that a petition to an appellate court for the writ of mandamus ‘shall contain ... a statement of the reasons why the writ should issue, with citations to the authorities and the statutes relied on.’ (Emphasis added.) Similarly, Rule 28(a)[(10)], Ala. R.App. P., requires that arguments in briefs contain ‘citations to the authorities, statutes and parts of the record relied on.’ (Emphasis added.) It is settled that a failure to comply with the requirements of Rule 28(a)[(10)] requiring citation of authority for arguments provides the Court with a basis for disregarding those arguments:
“ ‘When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research:... ’
“City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala. 1998).... If anything, the extraordinary nature of a writ of mandamus makes the Rule 21 requirement of citation to authority even more compelling than the Rule 28 requirement of citation to authority in a brief on appeal. Thus, Showers’s failure to cite authority supporting her arguments, as required by Rule 21, provides this Court an ample basis for refusing to consider those arguments, and her petition could properly be denied on that basis.”
(Final emphasis added.) Here, as in Showers, the Spurgeons have not cited authority to support their assertion that foster parents are State officials or agents for State-immunity purposes. Therefore, pursuant to Showers, the Spurgeons’ petition for mandamus relief is due to be denied in that regard.
Similarly, the Spurgeons argue that, as foster parents, they are entitled to State-agent immunity pursuant to the restatement of State-agent immunity in Ex parte Cranman, 792 So.2d 392 (Ala.2000).[2] *670 Again, however, they have cited no authority indicating that foster parents are State agents or officials for purposes of State-agent immunity. Therefore, pursuant to Showers, the Spurgeons have not demonstrated a clear legal right to the relief sought, and the petition is due to be denied in this regard.
Finally, the Spurgeons argue that “[t]he trial court erred ... by not striking [Brakefield’s] opposition [brief] filed on the morning of the hearing on [their] summary judgment motion,” petition, at 25, and that “[t]he trial court erred by not excluding the photographs taken after the incident of June 8, 2008.” Petition, at 28. As the Spurgeons themselves have noted, mandamus review of a denial of a summary judgment on immunity grounds is an exception to the “[t]he general rule ... that a denial of a motion for summary judgment is not reviewable.” Petition, at 14. Neither the brief nor the photographs are relevant to the resolution of the issues of the applicability of parental, State, or State-agent immunity. Therefore, the circuit court’s rulings on those matters are beyond the proper scope of mandamus review, and we will not address the Spurgeons’ claims of error.

Conclusion

For the foregoing reasons, we hold that the negligence claims against the Spur-geons are barred by the doctrine of parental immunity. Therefore, we grant the Spurgeons’ petition in that regard and issue a writ of mandamus directing the circuit court to dismiss the negligence claims against them. In all other respects, we deny the mandamus petition.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
MALONE, C.J., and STUART, BOLIN, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.

1. In Newman v. Cole, 872 So.2d 138 (Ala.2003), this Court addressed whether the doctrine of parental immunity should bar claims by the estate of a minor child against the child's parents alleging negligence, wantonness, and willful and intentional conduct resulting in the child’s death. In a per curiam opinion, two Justices of the Court determined "that a further exception to the [parental-immunity] doctrine should be recognized where it is shown by clear and convincing evidence that a parent's willful and intentional injury caused the death of his or her child.” 872 So.2d at 140.
Justices Johnstone and Woodall concurred in the per curiam opinion. Justices Houston and Harwood concurred in the result reached by the per curiam opinion, stating that they would "go further ... and hold that any wrongful-death action predicated on the death of a minor could be brought against his or her parent or parents.” Newman, 872 So.2d at 146 (Harwood, J., concurring in the result). Justice Lyons concurred in the result reached by the per curiam opinion as it related to the claims of willful and intentional conduct but dissented from the decision to affirm the trial court’s dismissal of the negligence and wantonness claims on the ground of parental immunity. Justice Lyons stated:
"I would prefer to address the prospect for exceptions [to the parental-immunity doctrine] by formulating a standard sufficient to protect the child when a parent causes injury under circumstances where no reasonable person could expect immunity from the consequences of his or her action, such as where the conduct has been made a felony by the Legislature or is a misdemeanor with respect to conduct directed toward children below an age limit that is irrelevant to the duties imposed by the parent-child relationship."
872 So.2d at 147 (Lyons, J., concurring in the result in part and dissenting in part). Chief Justice Moore and Justices See, Brown, and Stuart dissented from the recognition of any further exception to the parental-immunity .doctrine under the facts of that case. This Court has not addressed the doctrine in any subsequent case.

. The analysis in Cranman, a plurality opinion, was adopted by this Court in Ex parte Butts, 775 So.2d 173 (Ala.2000).